Nathan R. Sobel, S.
The will of George Chusid after providing a trust for his wife out of the residuary equal to the full marital deduction, directs the division of the balance of the residue into 10 equal shares in trust for his sons. Three tenths are allocated as a trust for his son Sol Chusid. Specific .provisions applicable solely to that trust make it in nature a spendthrift trust (to pay or apply the income to the use of the beneficiaries) but in law a discretionary trust.
Under the will the principal of Sol Chusid 5s trust is also payable to him in periodic installments of 5% of total corpus each year commencing at age 35 until exhausted. Unlike the discretionary authority to the trustees with respect to income, the directions for periodic payments of principal out of corpus are absolute. The trustees have no discretion. However, there is a restraint against alienation of principal by the beneficiary while such principal is in the hands of the trustees.
Sol Chusid is presently 42 years of age and is presently entitled to 35% of the principal when the corpus of his trust is allocated and thereafter 5% thereof each year. His trust cannot as yet be set up until substantial realty holdings of testator are sold.
The petitioner in the instant proceeding is Helen Chusid, wife of Sol Chusid. The couple have been living apart since 1962. Since that time, petitioner wife has maintained a home and supported their three infant children (now 7, 9 and 11). In proceedings in the Family Court, the wife has from time to time been awarded some small sums for support. However in February 1967, the Family Court entered a suspension order — Sol Chusid having established that he had no assets, was unable (for reasons not pertinent to this decision) to earn any living and was dependent for his support on his wealthy parents. At the time of the suspension order, arrears on prior orders had accumulated in the sum of $3,640. It does not appear whether a judgment has been entered (Family Ct. Act, § 460). There is no dispute in respect of these basic facts. It is evident from this brief statement that the wife and children have received no support whatsoever for two years and. very little in toto since 1962.
The answer of the trustees raises questions of law. It has been stipulated that the issues of fact, since not in dispute, may be determined on the basis of the affidavits submitted. Sol *464 Chusid has been served with citation and has filed an affidavit herein.
The petition of the wife requests a direction by the court to the trustees to pay (1) a part of the income from the trust and' (2) a part of the presently due and future payments of principal for the support of the three infant children. A guardian ad litem appointed for the children joins in the petition.
The general proposition may be broadly stated. A testator may dispose of his own property as he pleases. Among other things he may create a trust for the benefit of an infant or improvident person and place it beyond the reach of the beneficiary and his creditors so as not to defeat the settlor’s purpose by the beneficiary alienating the income or squandering the principal (Matter of Wentworth, 230 N. Y. 176). He may create a spendthrift trust, a discretionary trust or a trust for support and surround any of these with protective features providing that the trust shall terminate upon any attempt to alienate by the beneficiary or his creditors.
All of the foregoing and more are within the power of the testator provided the protective provisions are not contrary to statute or against public policy.
Today, despite contrary expressed intention and purpose of the testator, statutes permit judgment creditors to reach excess income and even principal of a trust (CPLR 5205, subd. [e], 5226, 5231). The principle codified by the statutes is that no man should be permitted to live at the same time in luxury and in debt.
And, more important, despite provision against alienation in the trust instrument, the beneficiary of a spendthrift trust is permitted by statute to transfer or assign any part or all the income to or for the benefit of a person whom he is legally obligated to support (EPTL 7-1.5, subd. [d]). This relatively new .statute permits only voluntary assignments. But long before its enactment, decisions had approved such assignments. (Matter of Littauer, 285 App. Div. 95, 98; Matter of Bellamore, 27 Misc 2d 118; Griswold, Spendthrift Trusts [2d ed.], § 338; Restatement, Trusts 2d, § 157, Comment g.)
Also, in the absence of statute and without the consent of the beneficiary, public policy has recognized the right of a wife and dependent children to reach the income and on occasion the principal of spendthrift trusts. The principle here is that restraints on alienation and protective provisions are void as against public policy insofar as the rights of wives and dependent children are concerned (see Ann. 91 ALR 2d 262-316; *465 Restatement, Trusts 2d, § 157, Comment a; 2 Scott, Trusts [3d ed.], § 157.1, p. 1210).
The public policy is stronger where the rights of dependent children rather than wives are concerned, particularly where they may become public charges. In a case quite similar to the matter under consideration the Oregon Supreme Court discussed the considerations underlying that public policy as expressed in the decisions throughout the Nation (see Shelley v. Shelley, 223 Ore. 328). These need not be repeated here. The court’s conclusion was that the obligation to support dependent children transcends all other obligations including that of the beneficiary himself for his own food, clothing and shelter. It decided that the children could reach the income in the face of spendthrift trust restraints broad enough to bar them. It adopted the view of the trial court that the children may reach only so much of the income as the trial court found reasonable having in mind the respective needs of the children and father, the amount of the income, the availablility of the corpus and other factors found relevant.
From these broad considerations, we consider the claims of the children to part of the income from the trust and part of the principal separately.
I
Short attention need be given to the claims of the children to income for, under the terms of the will, the three children are named income beneficiaries. Paragraph Seventh in pertinent part provides: 1 ‘ my trustees shall have the right and power in their absolute discretion as they shall from time to time determine, to pay or apply the income of said trust to the use ox my son Sol Chusid and the children of my son Sol Chusid, or for their benefit in such shares or proportions and in such manner as they shall from time to time deem advisable without equality of treatment and to the exclusion of any one or more of them, taking into consideration the best interests and welfare of all of them.”
The children are clearly income beneficiaries under a ‘ ‘ mixed ’ ’ discretionary trust. They are entitled to share with their father when the income is distributed. True, the trustees are vested with “absolute discretion”. This is however a defensive term not to be given too literal a meaning. It is generally purposed to protect the trustees from unreasonable demands of the beneficiary (Matter of Siloti, 192 Misc. 201) and from demands of creditors. It does not insulate or protect *466 the trustees from responsibility to and reasonable directions from the court. (Ireland v. Ireland, 84 N. Y. 321; Ford v. Ford, 230 Ky. 56; Matter of Sullivan, 144 Neb. 36; Eaton v. Eaton, 82 N. H. 216; cf. Hamilton v. Drogo, 241 N. Y. 401; Matter of Sand v. Beach, 270 N. Y. 281.) This is particularly true where the income beneficiaries are dependent children who will either starve or become public charges if the trustees refuse to exercise discretion in their favor. So that even where the trust is a pure discretionary trust, the trustees’ discretion yields to and is subordinate to the equity powers of the court to direct payment for the support of minor dependent children. (Matter of Sullivan, supra.)
It is concluded that a court supervising a discretionary trust for the benefit of named dependent children, may direct the trustees to make appropriate payments out of the income for their support. (Griswold, Spendthrift Trusts [2d ed.], § 333; 2 Scott, Trusts [3d ed.], § 157.1.) Upon all of the relevant evidence, taking into consideration the needs of the children and their father, the potential income from the trust and the father’s right "to periodic principal payments, the trustees are directed to distribute as soon as practicable the income from the Sol Chusid trust in the proportion of at least two thirds to petitioner for the support of the three children of Sol Chusid.
Insofar as their right to income is concerned, the court obviously has jurisdiction, since the children are parties as named beneficiaries. This would also be true where an intention can be established to include the children as beneficiaries although not specifically named (see Ann. 91 ALR 2d 273 et seq., § 5; Oberndorf v. Farmers’ Loan & Trust Co., 208 N. Y. 367.)
II
With respect to the right of the children to part of the principal, the issue is different and more difficult.
The children are not named beneficiaries of the principal payments. (They are however contingent remaindermen should Sol Chusid die before the corpus is exhausted.) There is no discretion in the trustees; Sol Chusid’s right to principal is absolute. The presently due payments (35%) become his as soon as the corpus is set up. The periodic payments (5% each) become his on his birthdays. Judgment creditors may reach such principal when and as it is no longer trust corpus but is due to and owned by the remaindermen (Bergmann v. Lord, 194 N. Y. 70; Matter of Owen, 44 Misc 2d 842, 847; Matter of Sand v. Beach, 270 N. Y. 281, supra; Hamilton v. Drogo, 241 *467 N. Y. 401 supra; cf. Matter of Staff v. Staff, 9 A D 2d 80; Ferguson y. Ferguson, 247 App. Div. 24). The question, is: Can these dependent children solely by virtue of that status reach the principal?
The children are not judgment creditors (CPLR 5205, subds. [d] and [e]; 5226, 5231; Sarver v. Towne, 285 N. Y. 264; Brearley School v. Ward, 201 N. Y. 358; Matter of Sand v. Beach, 270 N. Y. 281, supra). Nor are they “ creditors ” by virtue of a judgment, order, decree or award for their benefit in a matrimonial action. (Matter of Knauth, 12 N Y 2d 259; Wetmore v. Wetmore, 149 N. Y. 520; Matter of Goelet, 28 A D 2d 149; Moore v. Moore, 143 App. Div. 428, affd. 208 N. Y. 97; Hoagland v. Leask, 154 App. Div. 101, affd. 214 N. Y. 645; Matter of Littauer, 285 App. Div. 95, mot. for lv. to app. den. 308 N. Y. 1052, supra.) Finally they are not beneficiaries of a voluntary assignment (EPTL 7-1.5, subd. [d]) nor are they such by virtue of a separation agreement. (Matter of Goelet, supra; Matter of Bellamore, 27 Misc 2d 118, supra; Matter of Yard, 116 Misc. 19.)
Not being any of these, these children must necessarily predicate their claim to the principal payments solely upon their status as dependent children. That issue seems never to have arisen in this State. (It does not arise in other States because usually the same court determines their status as “ creditors ” as well as their right to a share of the trust funds.)
The question is whether dependent children who have not established their claim as “ creditors ” in another forum, can bring a direct proceeding in the Surrogate’s Court to compel trustees to pay over to them a share of a trust for the benefit of their father? In this case it is principal payments from the trust which they seek, having established their right to bring a direct proceeding for interest payments.
In Matter of Littauer (285 App. Div. 95 [1954]) the late Justice Halpeku, following his usual thorough discussion of issues, concluded that a direct proceeding against a trustee does not lie (p. 101). One difference between this case and Littauer is that this court does have jurisdiction and power over part of the children’s prayer for relief, i.e., their rights as named beneficiaries. There is here also the fact that we have a determination as to the right to support from another forum, to wit: the Family Court. Still another difference may be that, since Littauer, a new and more explicit judiciary article confers affirmative jurisdiction on the Surrogates ’ Courts (N. Y. Const., art. YI, § 12, subds. d and e, eff. Sept. 1, 1962) and new statutes (SOPA 201, 202, 209) confer somewhat broader and more *468 explicit jurisdiction and powers on such courts. That courts have been timid or reluctant to exercise such jurisdiction is not determinative if the statutes indeed confer such jurisdiction.
Section 201 grants all jurisdiction conferred by the Constitution and continues in the Surrogates’ Courts all jurisdiction formerly granted under the Surrogate’s Court Act. That act specifically conferred upon these courts jurisdiction over testamentary trusts and trustees. (Surrogate’s Ct. Act, § 20, subd. 5 ; § 171.) It is further provided (SCPA 201, subd. 2) that these courts, when jurisdiction is conferred, shall exercise full and complete jurisdiction in equity as well as in law. To supplement the foregoing it is explicitly provided (SCPA 202) that the jurisdiction and power conferred may be exercised in a direct independent proceeding (overruling Matter of Venblow, 2 A D 2d 365) rather than a general proceeding, e.g., an accounting.
The general grant of jurisdiction is contained in subdivision 3 of section 201: “ The court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to the affairs of decedents, and upon' the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.” (Italics supplied.)
This general grant of jurisdiction is implemented by incidental powers granted to the court (SCPA 209):
“4. To determine a decedent’s interest in any property * * * and to determine the rights of any persons claiming an interest therein, as against the decedent, or as between themselves ” (italics added).
“9. In the exercise of its jurisdiction, the court shall have all of the powers that the supreme court would have in like actions and proceedings
The basic question under these statutes is, when does the Surrogate’s Court have jurisdiction of a controversy between beneficiaries of an estate and persons asserting claims against the beneficiaries (rather than the decedent) — under what circumstances do such controversies concern ‘1 matters relating to the affairs of decedents ’ ’ 1 Very little that is specific and not general has been decided with regard to this question. (See 1 Warren’s Heaton, Surrogates’ Courts [6th ed.], § 35, pars. 2-5.) It has already been noted that judgment creditors *469 and “ creditors ” by virtue of matrimonial orders or decrees or even separation agreements may enforce their claims against legatees and income beneficiaries in that court. It has been held that assignees of a beneficiary’s interest also have such standing (Isaacs v. Isaacs, 208 App. Div. 61). But Littauer (285 App. Div. 95, supra) holds that a wife or children of the beneficiary seeking to enforce by a direct proceeding a claim to alimony or support must first establish such a claim in another forum to have standing in the Surrogate’s Court.
A plain reading of the general jurisdiction statute (SCPA 201, subd. 3) does not justify such a distinction between creditors, assignees and dependents of the beneficiary. The Legislature, realizing the futility of compelling litigants to resort to another court of general jurisdiction about matters which may more economically and more expeditiously be disposed of in a pending matter in the Surrogate’s Court, has expanded the jurisdiction of that court so that litigants would not be compelled to resort to two forums for the determination of their claims (Matter of Raymond v. Davis, 248 N. Y. 67; Matter of Mac Elroy, 58 Misc 2d 93).
Such a construction seems justified by statutes which confer jurisdiction to determine legal and equitable questions arising “ between any or all of the parties * * * and any other person having any claim or interest therein ” (§ 201, subd. 3) and to determine the rights of any persons claiming an interest in a decedent’s property “ as against the decedent, or as between themselves ” (SCPA 209, subd. 4). Such a conclusion is fortified by the transfer section (SCPA 209, subd. 3) and the “ like power ” section (SCPA 209, subd. 9).
It is concluded that the children of Sol Chusid, solely by virtue of their status as dependent children, have standing in this proceeding under the statutes discussed. To hold otherwise would relegate them to the Family Court to obtain still another order for current support convertible into a judgment should their father again fail to make the support payments. And, of course, children cannot commence a matrimonial action in another forum and obtain relief in this court as an incident thereto.
Entirely apart from the conclusion that the children have Standing solely by virtue of their status, this court also has jurisdiction by virtue of the prior order for support in the Family Court, the children having exhausted their remedies therein. Such a determination in that forum suffices even under Matter of Littauer (285 App. Div. 95, 101, supra) to confer upon them standing to bring the proceeding in this court.
*470 For yet another reason this court has jurisdiction to determine the claim of the children to part of the principal payments due to their father. The executors have filed their account, and the children (as income beneficiaries and as contingent remaindermen) and their father are essential parties and have been cited. In their direct proceeding (authorized by SCPA 202) both are essential parties and all have been cited. There is little question that once they are all before the court as essential parties in a proceeding of which the court has jurisdiction, the court may determine 1 ‘ all questions, legal or equitable arising between any or all of the parties ”. (SCPA 201, subd. 3.) The children’s right to income payments necessarily involves consideration of the father’s absolute right to periodic payments of principal and is a matter ‘ ‘ necessary to be determined in order to make a full, equitable and complete disposition of the matter * * * as justice requires ” (SCPA 201, subd. 3).
On the basis of the evidence before the court, including the respective needs of the parties, the court directs the executors, whenever principal payments are made, to pay two thirds of such amount to the petitioner for the benefit of the three children of Sol Chusid.
Payment of the children’s share of the presently due principal when in fact made shall be in full satisfaction of past-due indebtedness under the orders of the Family Court.
Depending upon the total amounts of future income and principal payments to be made for the benefit of the children, any party may apply from time to time for modification of the percentages fixed by the decree.
It is also concluded that the protective provisions contained in the codicil of June 22, 1967 are not applicable by its terms to the instant proceeding by the children, but if applicable are contrary to public policy.