HELMSLEY-SPEAR, INC., Respondent, v FRANK WINTER, Appellant, et al., Defendants.

First Department, April 17, 1980

### APPEARANCES OF COUNSEL

*Melvin Hirshowitz* of counsel *(Hyman Bravin,* attorney), for appellant.

*Arthur N. Lambert* of counsel *(William R. Mait* and *Michael Maillet* with him on the brief; *Hendler & Murray,* attorneys), for respondent.

### OPINION OF THE COURT

SILVERMAN, J.

This is an appeal by defendant Winter and his wife from an order of the Supreme Court denying their motion to vacate an attachment with respect to defendant Winter's interest in the Helmsley-Spear, Inc. Employees' Profit Sharing Plan and Trust.

Defendant Winter had been an employee of plaintiff Helmsley-Spear, Inc. The complaint alleged that while so employed he had engaged in a course of fraud, involving false invoices from alleged suppliers, misappropriations of checks, and kickbacks from suppliers, resulting in damages to plaintiff of $665,549. Winter was indicted with respect to some of these transactions, acquitted as to some, and convicted of grand larceny with respect to the theft of two checks totaling $8,584. That conviction has recently been affirmed by this court *(People v Winter,* 74 AD2d 741). In the present action, partial summary judgment has been granted in plaintiff's favor with respect to the amounts involved in the transactions for which defendant Winter has been convicted, and the remainder of the case has not yet been determined.

■ On September 25, 1975, an order of attachment issued out of the Supreme Court in the amount sued for. That attachment was levied by the Sheriff on the proceeds of the trust (as well as other property). Thereupon, the trust paid over to the Sheriff pursuant to the attachment the sum of $20,924.59 "which represent the sole and complete interest of Frank Winter in the Helmsley-Spear, Inc. Employees' Profit Sharing Plan and Trust." Defendant Winter does not attack the validity of the original attachment order, but he and his wife have moved to vacate the attachment so far as applicable to the moneys paid to the Sheriff by the trust on the ground that that money is exempt from the claims of creditors. In our view, this money is exempt, and, therefore, the motion to vacate the levy of the attachment with respect to these funds should have been granted.

*Hadden v Consolidated Edison Co.* (34 NY2d 88, 45 NY2d 466) involved a contention that the allegedly dishonest employee was not entitled to his pension benefit because his continued employment, and thus his pension, had been fraudulently and improperly obtained by misconduct and the concealment thereof. The present pleadings present no such issue. The trust, as we have seen, paid the money to the Sheriff as representing the interest of defendant Winter in the trust. And, indeed, the levy of the attachment assumed that this money is property of defendant Winter available to satisfy the claims of his creditors.

Nor can the case be considered as if the levy were on money actually in possession of defendant Winter. The garnishees were the trustees of the trust with respect to funds "held or controlled" by the trustees. (CPLR 5201, subd [c], par 2.) The fact that, if once the funds were in Winter's hands they would theoretically be subject 100% to the claims of creditors, does not alter the exemption, if any, so long as the funds are held by the trust. Otherwise there would be no meaning to the provisions of CPLR 5205 (subd [d], par 1) exempting from application to the satisfaction of a money judgment 90% of the payments from a trust, or CPLR 5205 (subd [c]) exempting property "while held in trust."

Coming then to the main question, whether defendant Winter's interest in the trust, to the extent that it was valid, is subject to the claims of creditors, we find exemptions from such claims in the Employee Retirement Income Security Act of 1974 ("ERISA", US Code, tit 29, § 1001 *et seq.),* and in the

terms of the trust itself, and to the extent of 90% in our State statute (CPLR 5205, subd [d], par 1).

The Appellate Division in the Second Department has recently held that vested benefits from a pension trust are not exempt from execution under ERISA but are exempt to the extent of 90% under the State statute. *(National Bank of North Amer. v International Brotherhood of Elec. Workers,* 69 AD2d 679.) Justice RABIN dissented on the ground that in his view, the entire trust was exempt under ERISA. With due respect we agree with Justice RABIN.

ERISA provides in subdivision (d) of section 206 (US Code, tit 29, § 1056, subd [d]): "(d) (1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." In general, it is only property which can be assigned or alienated that is subject to the claims of creditors. (See, e.g., CPLR 5201, subd [a].)

The Internal Revenue Service has promulgated regulations pursuant to ERISA to the effect "that benefits provided under the plan may not be * * * assigned * * * alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." (1 Fed Tax Reg, § 1.401(a)-13 (b) (1) [1980].) "It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld." *(Matter of Howard v Wyman,* 28 NY2d 434, 438.)

The trust instrument itself provides: "SECTION 3.6. *Inalienability of benefits.* The right of any person to receive any payment from the trust fund becoming payable to him under the provisions of this Plan shall not be subject to alienation or assignment and * * * should such right be subjected to attachment, execution, garnishment, acquestration *[sic]* or other legal, equitable or other process, it shall *ipso facto* pass and be transferred to such one or more as may be appointed by the Committee from among the beneficiaries, if any, of the participant with respect to whom such right arises, and the spouse, blood relatives or dependents of such participant and in such shares and proportions as the Committee may appoint".

Even if ERISA did not exempt these funds from the claims of creditors, our State statute would still exempt 90% of them. CPLR 5205 (subd [c]) exempts from application to the satisfaction of a money judgment "[a]ny property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a

person other than the judgment debtor". This apparently applies to the principal of the trust. (See CPLR 5205, subd [d], par 1.) CPLR 5205 (subd [d], par 1) then declares to be exempt "ninety per cent of the income or other payments from a trust the principal of which is exempt under subdivision (c)", except as determined to be unnecessary for the reasonable requirements of the judgment debtor and his dependents. The Appellate Division, Second Department, in the *National Bank of North Amer.* case (69 AD2d 679, *supra)* was unanimous in its view that at least this 90% was exempt.

It is argued that the statutory exemptions should not apply to the claims of tort creditors, and particularly, to the claims of tort creditors who are settlors of the allegedly exempt trust. We see nothing in the statutes carving out such an exception. And we note "strong public policy against forfeiture of employee benefits manifested by the Employee Retirement Income Security Act of 1974 (ERISA) (US Code, tit 29, § 1001 *et seq.).*" *(Post v Merrill Lynch, Pierce, Fenner & Smith,* 48 NY2d 84, 88.)

We therefore think that defendant Winter's interest in the trust was not subject to attachment on the claims here sued on.

However, we do not think that appellants are entitled to attorneys' fees. There is no claim that the order of attachment as such was invalid or improperly issued. The only claim is that this particular fund is not subject to the attachment.

The order of the Supreme Court, New York County (H. SCHWARTZ, J.), entered September 5, 1979, should be modified, on the law, to the extent that the levy of the attachment on the interest of defendant Winter in the trust should be vacated, and the order should otherwise be affirmed, without costs.

FEIN, J. P. (dissenting). During the course of defendant Winter's employment by plaintiff as an officer and administrator from 1958 to 1975, plaintiff employer was making the sole contributions to a trust fund for its employee's pension, and Winter was allegedly stealing $665,549.40 from his employer.

Winter was indicted in September, 1975 on 22 counts of conspiracy to defraud plaintiff. In August, 1976 he was found guilty on two counts of grand larceny in the second degree, based on acts of fraud in 1973 and 1975, netting $8,584.36. Plaintiff commenced this civil action in September, 1975, and

obtained a prejudgment order of attachment. Partial enforcement of the attachment was achieved by levy against defendant's Westchester home. A foreclosure sale yielded some $53,000. Approximately half was paid to plaintiff as second mortgagee on the property and the balance to the Westchester County Commissioner of Finance pursuant to plaintiff's order of attachment. In November, 1976 the now retired Winter's pension trust fund was subjected to the attachment by a levy, pursuant to which the $20,924.59 vested balance was paid over to the New York County Sheriff on April 25, 1977.

Predicated upon defendant's August 1976 conviction, plaintiff, in February, 1979, obtained partial summary judgment in the sum of $8,584.36, the amount involved in the two counts of the indictment upon which defendant was found guilty. In April, 1979, defendant Winter and his wife moved to vacate the levy against the pension trust fund, under which the New York County Sheriff holds the proceeds, contending that the money is exempt and not attachable.

Attachment is limited to debts or property against which a money judgment may be enforced under CPLR 5201 (see CPLR 6202). A money judgment cannot be satisfied against "exempt" debts or property (CPLR 5201, subds [a], [b]). Among such properties exempt from execution or levy are so-called spendthrift trusts, funds held in trust which have proceeded from a person other than the judgment debtor (CPLR 5205, subd [c]) and 90% of the income or other payments from such trusts (CPLR 5205, subd [d], par 1).

The Employee Retirement Income Security Act of 1974 ("ERISA", US Code, tit 29, § 1001 *et seq),* provides in subdivision (d) of section 206 (US Code, tit 29, § 1056, subd [d]): "(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

The trust instrument itself provides: "SECTION 3.6. *Inalienability of benefits.* The right of any person to receive any payment from the trust fund becoming payable to him under the provisions of this Plan shall not be subject to alienation or assignment and * * * should such right be subjected to attachment, execution, garnishment, acquestration *[sic]* or other legal, equitable or other process, it shall *ipso facto* pass and be transferred to such one or more as may be appointed by the Committee from among the beneficiaries, if any, of the participant with respect to whom such right arises, and the spouse,

blood relatives or dependents of such participant and in such shares and proportions as the Committee may appoint".

We agree with the majority that the language of the pertinent CPLR provisions, "ERISA" and the trust instrument itself, is to the effect that the corpus of such trust and the income therefrom are exempt from attachment, with the possible exception of 10% thereof (CPLR 5205, subd [d], par 1; *National Bank of North Amer. v International Brotherhood of Elec. Workers,* 69 AD2d 679). However, unlike the majority, we do not find that this is dispositive. The issue in this case is not, as the majority suggests, whether an exception should be carved out from such exemptions in favor of tort creditors. The narrower issue with which we are presented is whether a faithless employee, who has stolen from his employer during the period of time that the employer has contributed to the pension funds, may rely upon the statutory exemption to preclude the employer from enforcing a judgment for the money stolen against the corpus and/or the interest from such fund after it has vested. We have concluded that as a matter of public policy the exemption statutes and the provisions of the trust indenture were not designed for this purpose.

It has long been settled that an employee must account to his employer for secret profits, and also that he forfeits his right to compensation for services rendered by him if he is shown to have been disloyal *(Lamdin v Broadway Surface Adv. Corp.,* 272 NY 133; *Byrne v Barrett,* 268 NY 199; *Murray v Beard,* 102 NY 505). The principle which animates those cases is that an employee should not be aided in benefiting from, or retaining the benefits of, thefts from his employer. That principle provides a proper foundation for permitting the employer here to enforce its judgment against the trust fund and its proceeds. To permit enforcement in such case will not do violence to the purpose of the exemption statutes or the provisions of the trust agreement.

The purpose of the provisions in the CPLR and other statutes exempting spendthrift trusts from attachment or other enforcement is to insure that the beneficiary will not fritter away the moneys provided for his or her needs *(Matter of Wentworth,* 230 NY 176, 185; *Matter of Knauss,* 204 Misc 207, 208; *Matter of Caswell,* 185 Misc 599, affd 269 App Div 809). The exemption was not designed to permit the beneficiary to steal from his employer and to hide behind the exemption statute when the employer seeks recovery of the ill-gotten

gains by reaching for funds originally provided by the employer.

The same analysis applies with respect to "ERISA". That statute and the exemptions contained therein were designed to insure that an employee who worked loyally for an employer with a pension plan would not find himself without any pension because of some action or inaction by the employer or the fiduciary by way of mismanagement, wasting, looting or arbitrary vesting rules. The statute was not designed to aid thieves in retaining their loot.

Plainly, the exemption provision contained in the trust indenture here in issue was not intended to provide a shield to one in Winter's position.

We thus write on a relatively clean slate. In this respect, *Hadden v Consolidated Edison Co. of N. Y.* (34 NY2d 88, 45 NY2d 466) is instructive. We agree with the majority that the issues tendered are substantially different. The issue there was the right of the employee to the pension in the face of the fact that he was permitted to retire on a pension on the basis of a fraudulent concealment of his misconduct. Here, it is undisputed that the trust has paid the money to the Sheriff as representing the vested interest of Winter in the trust. The very levy in dispute assumes that this money is the property of Winter, available to satisfy the claim of his employer-creditor.

However there are two statements in *Hadden* which suggest that there are overriding considerations of public policy which require that an exception be read into the exemption provisions of the CPLR, "ERISA" and the trust indenture. Thus, in the first *Hadden* case it was stated (34 NY2d, at p 96): "While there is no language in the Plan expressly conditioning pension payments upon the employee's performing honestly and loyally, there is little difficulty in regarding these qualifications as a constructive condition of Con Edison's duty of performing its promise to make pension payments."

In the second *Hadden* case the point is made even more explicitly (45 NY2d, at p 470): "Hadden as an officer and employee of defendant was bound at all times to exercise the utmost good faith in the performance of his duties for the principal *(Jones Co. v Burke,* 306 NY 172, 187-188)."

The case goes on to announce the right of the employer to discharge Hadden under the circumstances and thus to eliminate his pension rights.

The express language of the exemption statute and of trust indentures designed to preclude attachment or other interference by creditors and others has been held not to bar enforcement of the rights of wives and children to support. In *Matter of Chusid* (60 Misc 2d 462, affd 35 AD2d 655) the restrictions against alienation in a testamentary trust were held not to preclude enforcement against the proceeds of court orders in favor of the wife and children for support, reaching both principal and interest. Public policy required such a result despite the testamentary language and pertinent statutes prohibiting alienation.

The *Chusid* court gave a future direction as to periodic payments despite the restrictions in the will. The exemption provisions of "ERISA" and of private and public pension trust agreements cannot, as a matter of public policy, bar enforcement of the right of the wife and children to support. *(Cogollos v Cogollos,* 93 Misc 2d 406; *Matter of Wanamaker v Wanamaker,* 93 Misc 2d 784; *Matter of M. H. v J. H.,* 93 Misc 2d 1016.)* There are obviously strong public policy considerations in favor of insuring the support of wives and children. Public policy also requires the conclusion that the exemption statutes and the trust agreement may not be interpreted to shield an employee, proven to be a thief, from the reach of remedies designed for the enforcement of judgments.

*Post v Merrill Lynch, Pierce, Fenner & Smith* (48 NY2d 84) relied upon by the majority, is not to the contrary. That case holds only that an employer may not deny a previously earned pension to a former employee upon the ground that the employee is now engaged in competition with his former employer. This has nothing to do with an employer seeking to recover from his faithless employee that which the employee has stolen from the employer.

The order, Supreme Court, New York County (H. Schwartz, J.), entered September 5, 1979, should be affirmed, together with costs.

Sandler and Sullivan, JJ., concur with Silverman, J.; Fein, J. P., and Carro, J., dissent in an opinion by Fein, J. P.

Order, Supreme Court, New York County, entered on September 5, 1979, modified, on the law, to the extent that the levy of the attachment on the interest of defendant Winter in the trust is vacated, and the order is otherwise affirmed, without costs and without disbursements.