**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a corporation, Third-Party Plaintiff and Judgment Creditor,**

v.

**H. Ray COX, Third-Party Defendant and Judgment Debtor,**

**Alabama City Bank of Gadsden, Garnishee and Plaintiff in Interpleader,**

**D.E. Locklear, Defendant in Interpleader.**

**Civ. A. No. 78–G–1236–M.**

United States District Court, N.D. Alabama, M.D.

March 15, 1984.

George P. Ford, Simmons & Ford, Gadsden, Ala., for St. Paul Fire and Marine Ins. Co.

Edward Cunningham, Taylor & Cunningham, Gadsden, Ala., for Locklear in interpleader action.

F. Michael Haney, Inzer, Suttle, Swann & Stivender, Gadsden, Ala., for garnishee and plaintiff in interpleader.

H. Ray Cox, pro se.

## MEMORANDUM OPINION

GUIN, District Judge.

This cause is before the court upon third-party plaintiff's motion for condemnation of funds interpleaded in response to a writ of garnishment which the court treats as a motion for summary judgment. The garnishment proceedings were instituted by judgment creditor, St. Paul Fire & Marine Insurance Company (St. Paul), against the vested interest of H. Ray Cox in the pension and profit sharing plan of Alabama City Bank of Gadsden, the garnishee. In addition to the judgment creditor's garnishment, a claim against the same fund has been made by D.E. Locklear, who contends that Cox's interest in the plan was assigned to Locklear as a "guarantee" for certain equipment and realty leases executed between these parties. To avoid multiple litigation of potential liabilities, the bank instituted an interpleader action in the amount of the monies payable to Cox under the pension and profit sharing plan.

The garnishment proceeding instituted by St. Paul came after a final judgment in the amount of $152,500.00 plus costs had been entered in its favor on June 16, 1980, against Cox. St. Paul's claim against Cox arose as a result of contract obligations between Alabama City Bank and St. Paul as insurer against the bank's loss caused by employee dishonesty. On August 12, 1977, pleading guilty to eighteen counts of a fifty-one count indictment, Cox was convicted of willfully and knowingly misapplying and causing to be misapplied bank monies and funds with the intent to injure and defraud said bank in violation of 18 U.S.C. § 656. The bank subsequently filed with its surety, St. Paul, a proof of loss statement covering transactions handled by Cox. As part of the settlement agreement between the insurer, St. Paul, and the insured, Alabama City Bank, St. Paul paid to the bank $152,500.00 and the bank assigned all rights that it had against any person or persons responsible for the losses. St. Paul subsequently secured a judgment against Cox for the amount of the loss incurred. The judgment has remained un-

satisfied; hence, these post-judgment and interpleader actions.

Cox contends that the assignment to Locklear is invalid as a result of the strict prohibition against assignability included in the pension plan. It is also argued that the assignment fails as an invalid attempt to assign a future interest. This common law issue is not reached, however, because the public policy considerations regarding pension funds must be evaluated in accordance with the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* To ensure stability and security in the subject funds, Congress declared that nonassignment of plan benefits was to be the rule and not the exception. To this end, legislation was enacted which states that: "Each pension plan shall provide that benefits under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

The pension fund in question had a clause specifically designed to satisfy the Congressional mandate. The Employees Profit Sharing Plan and Trust Agreement of Alabama City Bank contains a nonalienation provision in Article IX, Section 16, which states that:

> No benefit payable under the Plan will, except as otherwise specifically provided by law, be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same will be void; nor will any benefit be in any manner liable for or subject to the debts, contracts, liabilities, engagements, or torts of the person entitled thereto. Upon the occurrence or threatened occurrence of any act or thing in violation of or contrary to the foregoing provision, then the benefit affected will, in the discretion of the Committee, cease and terminate, and in that event the Committee will hold or make the payments, which would otherwise be payable on account thereof, to or for the benefit of the Member or beneficiary involved, his spouse, children, or other dependents, or any of them, in such manner and in such proportion as the Committee may deem proper.

The clear language of the clause is to prohibit assignment of plan funds for the satisfaction of debts or obligations of the named fund participant. Nonalienability of pension fund assets is based upon sound public policy, has been sanctioned by Congress, and is the law of the land. The attempted assignment of the fund benefits to Locklear is, therefore, invalid. Because the court finds that the attempted assignment was void ab initio, issues surrounding the timing of execution, recording, and perfection of the lease agreements which were secured by the assignment need not be addressed.

Having found that the attempted assignment to Locklear was invalid, the court must next determine whether the garnishment proceeding instituted by the judgment creditor, St. Paul, reaches into the protected province of the defendant's pension trust fund. Trusts have through their historical development become an integral part of equitable jurisprudence, *Townsend v. Vanderwerker*, 160 U.S. 171, 16 S.Ct. 258, 40 L.Ed. 383 (1895), and have long been recognized as an independent source of equitable jurisdiction. *Scott v. Mussafer*, 223 Ala. 153, 134 So. 857 (1931). In the case at bar this court sits in equity because the administration of a trust is the point upon which all other issues turn. *Clews v. Jamieson*, 182 U.S. 461, 21 S.Ct. 845, 45 L.Ed. 1183 (1901). The court, therefore, construes plaintiff's claim as one for equitable, rather than legal, garnishment. *See State Farm Mutual Automobile Insurance Co. v. McClendon*, 269 Ala. 456, 114 So.2d 153, 156 (1959).

It has long been settled that a court sitting in equity will give redress when there is a right without a remedy or when the remedy would be incomplete. *See Tiger Motor Co. v. McMurtry*, 284 Ala. 283, 224 So.2d 638, 641 (1969) citing *Teague v. Russell*, 2 Stew. 420, 423 (Ala.1830). While equitable garnishment may be utilized to enforce a recognized right in a

manner unattainable at law, clearly established common or statutory law may not be disregarded. *Henderson v. Hall*, 134 Ala. 455, 32 So. 840 (1900). In his defense Cox relies upon the common law, contending that he has no present or possessory interests which support garnishment of the trust funds. He also proffers the statutory provisions of ERISA which prohibit alienation of those funds.

■ First, Cox contends that because Alabama City Bank is withholding funds pending the outcome of this litigation, there exists a "contingency" which precludes garnishment. If the commencement of a garnishment action were allowed to create a contingency which precluded garnishment, the entire process would be self-defeating. The term "contingency" must therefore be construed to mean that property with only a *possibility* of future acquisition is not subject to garnishment.

Mr. Cox correctly cites Alabama decisions dealing with legal garnishments which hold that funds sought to be garnished must be due absolutely and without contingency. *See Escambia Chemical Corp. v. United Insurance Co. of America*, 396 So.2d 66 (Ala.1981); *Sloss v. Glaze*, 231 Ala. 234, 164 So. 51 (1935). The legal garnishment cases simply do not apply. The subject matter of the instant garnishment proceeding is a trust fund and equitable jurisdiction attaches to all matters of trust administration. No other equity need be found. Equity depends on the chancellor's conscience. It does not allow a result which is unconscionable. Therefore, equitable considerations, especially those of unjust enrichment and clean hands, which are barred on the law side are applicable in equity. Because the funds held by Alabama City Bank are fully vested in, and are the acknowledged property of, Mr. Cox, the court finds that the pension funds are, at least in equity, the property of the defendant, absolutely and without contingency. The funds are the sole property of the defendant and garnishment is not precluded upon the contingency issue alone. *See*

*Druid City Hospital Board v. Epperson*, 378 So.2d 696 (Ala.1979).

The equitable garnishment action has long been recognized in Alabama. *See Henderson v. Hall*, 134 Ala. 455, 32 So. 840 (1900). The application of equitable garnishment has been limited by the Supreme Court of Florida, stating that equitable garnishment "cannot apply where the amount claimed is unliquidated, is in dispute, or is uncertain." *Ake v. Chancey*, 152 Fla. 677, 13 So.2d 6, 8 (1943). None of these limitations acts as a bar in the instant case. Other than the possible statutory bar discussed below, research has yielded no case which suggests any other impediment to the equitable garnishment proceeding before this court.

In addition to his reliance upon common law property principles, Cox argues that ERISA applies with equal weight to judgment creditors and assignees, so that the claims by St. Paul are defeated in the same manner as those of Locklear. Cox cites cases from various jurisdictions in support of his argument. *See, e.g., United Mine Workers v. Boyle*, 418 F.Supp. 406 (D.D.C. 1976) (public policy did not demand that settlor of trust be allowed to attach funds of trust beneficiary who breached fiduciary duty); *Christ Hospital v. Greenwald*, 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700 (1980) (garnishment of pension plan or its proceeds prohibited by ERISA); *Seventy-First Street & Broadway Corp. v. Thorne*, 10 N.J.Misc. 99, 157 A. 851 (1932) (public policy encouraging old age pension outweighs consideration of creditors); *Lowe v. Jones*, 414 Pa. 466, 200 A.2d 880 (1964) (the plain intendment of the pension's terms cannot be overcome by a creditor). The court notes that the decision in *General Motors Corp. v. Buha*, 623 F.2d 455 (6th Cir.1980), contains an excellent, succinct analysis of ERISA's history and states that "[t]he federal cases have construed ERISA's provision against assignment or alienation as prohibiting garnishments generally ...." 623 F.2d at 460.

As a general rule, to allow garnishment of a pension trust fund would violate the

clear intent of the pension plan terms and disregard federal law which is supported by sound public policy. There are, however, certain "implied exceptions" to the ERISA provisions. *Ball v. Revised Retirement Plan for Salaried Employees of Johns-Manville Corp. & Subsidiaries,* 522 F.Supp. 718 (D.Colo.1981). *See also Cody v. Riecker,* 454 F.Supp. 22 (E.D.N.Y.1978), *aff'd,* 594 F.2d 314 (2d Cir.1979); *American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118 (2d Cir.1979); *Cartledge v. Miller,* 457 F.Supp. 1146 (S.D.N.Y.1978); *Commonwealth ex rel. Magrini v. Magrini,* 263 Pa.Super. 366, 398 A.2d 179 (1979).

Garnishment actions have been allowed to proceed against a pension fund where the beneficiary of the plan sought to avoid a duty imposed by law. *See, e.g., Stone v. Stone,* 632 F.2d 740 (9th Cir.), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1980) (pension plan payments made directly to ex-spouse to pay community property share); *Operating Engineers' Local No. 428 Pension Trust Fund v. Zamborsky,* 470 F.Supp. 1174 (D.Ariz.1979), *aff'd,* 650 F.2d 196 (9th Cir.1981) (pension plan payments to satisfy alimony obligations); *Senco of Florida, Inc. v. Clark,* 473 F.Supp. 902 (M.D.Fla.1979) (garnishment pursuant to a court support order); *Central States Southeast & Southwest Areas Pension Fund v. Parr,* 480 F.Supp. 924 (E.D.Mich.1979) (pension plan payments to satisfy alimony obligations); *Knapp v. Johnson,* 301 N.W.2d 548 (Minn.1980) (garnishment of plan to satisfy support and alimony obligations); *Western Electric Co. v. Traphagen,* 166 N.J.Super. 418, 400 A.2d 66 (1979) (garnishment to satisfy alimony claim); *Ward v. Ward,* 164 N.J.Super. 354, 396 A.2d 365 (1978) (garnishment to enforce decree of support); *M.H. v. J.H.,* 93 Misc.2d 1016, 403 N.Y.S.2d 411 (1978) (garnishment for child support); *Wanamaker v. Wanamaker,* 93 Misc.2d 784, 401 N.Y. S.2d 702 (1978) (pension plan payments to satisfy alimony obligations). Affirming a district court in Alabama, the Eleventh Circuit has also refused to protect pension plan funds and benefits at the expense of legally imposed obligations with regard to familial relationships. *See Bowen v. Bowen,* 715 F.2d 559 (11th Cir.1983).

Of primary importance to the courts which have found "implied exceptions" to the ERISA proscription against alienation and assignment of pension fund proceeds has been the Congressional intent behind the legislation.

The Congress [found] that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee organizations, and other entities by which they are established or maintained; that a large volume of the activities of such plans is carried on by means of the mails and instrumentalities of interstate commerce; that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; that they substantially affect the revenues of the United States because they are afforded preferential Federal tax treatment; that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and sta-

bility of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C. § 1001(a).

The professed purpose of the Act is to promote stability in the work place by protecting the employee from potential misdeeds, negligence, or mismanagement by the employer. There is no indication that the unscrupulous employee is to be protected from the natural legal consequences of his own misdeeds.[1] The aforementioned implied exceptions have been applied primarily in the area of domestic relations. In several instances, the courts that found this exception reached the conclusion through statutory construction which states that ERISA protects dependents, as well as employees. *See* 29 U.S.C. § 1001(a), *supra*. Regardless of the underlying rationale, each of the cases espouses the principle that the broad ERISA proscription against assignment and alienation

of pension trust funds was not intended to provide an escape from each and every legal and moral obligation in each and every circumstance.

In the instant case, St. Paul as subrogee has stepped into the shoes of the victim. It has sought restitution through civil action for its payments to the defrauded bank and has been awarded a civil judgment. Cox now wishes to be insulated from liability for his misdeeds with the incongruous result that the very bank from which he misappropriated funds would be obligated to provide for his future security. According to the defendant, St. Paul's effort to collect a portion of the judgment through garnishment of the pension trust fund is prohibited by ERISA. The court must therefore determine whether or not Congress intended to provide the criminal with a windfall benefit by abrogating equitable principles, thereby effectively insulating him from the consequences of his wrongful conduct. This court holds Congress in higher regard than to so find. The bank's profit sharing and pension plan was no doubt designed to reward employees for past service as well as to provide employees with present incentives and future security. None of these ends is promoted by allowing a thief to retain his ill-gotten gain. Of primary importance in this case is the fact that it is extremely unlikely that Congress desired such a result.[2]

---

**1.** The court notes that it has been held that the ERISA proscription against the attachment of pension plans does act to protect the employee who has defrauded his employer. In *Helmsley-Spear, Inc. v. Winter*, 74 A.D.2d 195, 426 N.Y. S.2d 778 (1980), aff'd, 52 N.Y.2d 984, 419 N.E.2d 1078, 438 N.Y.S.2d 79 (1981), the employer had been the sole contributor to the trust fund, while the employee was allegedly involved in various frauds and kickbacks resulting in damages to his company of over $600,000. Though the employee was found guilty of grand larceny for amounts in excess of $8,000, the attachment of the pension funds was held to be improper. 426 N.Y.S.2d at 781.

A strong, well-reasoned dissent, which is adopted by this court, stated:

The issue in this case is not, as the majority suggests, whether an exception should be carved out from such exemptions in favor of tort creditors. The narrower issue with

. which we are presented is whether a faithless employee, who has stolen from his employer during the period of time that the employer has contributed to the pension funds, may rely upon the statutory exemption to preclude the employer from enforcing a judgment for the money stolen against the corpus and/or the interest from such fund after it has vested. We have concluded that as a matter of public policy the exemption statutes and the provisions of the trust indenture were not designed for this purpose.

426 N.Y.S.2d at 782 (Fein, J., dissenting).

**2.** It is interesting to note that Congress expressed its view of the criminal's civil liability in the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3579. The appropriate public policy is evidenced by this legislation which specifically provides for payment of restitution to be made by the convicted criminal to his victim. The court notes that this statute has recently

■ The common law is the foundation upon which the laws of the State of Alabama have been constructed. When called upon to declare the legal effect and meaning of a legislative or Congressional enactment, the courts must read the statute in light of the common law.

The presumption is that the legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication, and that it does not intend to overthrow fundamental principles, infringe rights, or depart from a general system of law without expressing its intention with irresistable clearness.

*Duncan v. Rudulph*, 245 Ala. 175, 16 So.2d 313, 314 (1944). There is no language in ERISA to indicate that the Congress intended to enter and abrogate the entire field of state common law and equity. It is clear that the *Duncan* court would not interpret the statute in that manner, and this court adopts that sound rationale.

By relying upon ERISA, the defendant necessarily asserts that the Congress has preempted the field. "The nature of the power exerted by Congress, the object sought to be attained, and the character of the obligations imposed by the law, are all important in considering the question of whether supreme federal enactments preclude enforcement of state laws on the same subject." *Hines v. Davidowitz*, 312 U.S. 52, 70, 61 S.Ct. 399, 406, 85 L.Ed. 581, 589 (1940). The primary function of the court is to determine whether, under the circumstances of the case, the state law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." 312 U.S. at 67-68, 61 S.Ct. at 404, 85 L.Ed. at 587. The court concludes that state common law and equity do not conflict with ERISA's clearly

been held unconstitutional in *United States v. Welden*, 568 F.Supp. 516 (N.D.Ala.1983). This court agrees with Judge Acker's legal analysis of the Act's impact, and looks to the statute only to note that enactment of such a statute, after years of study and debate, indicates a deep Congressional concern that a criminal *not* be allowed to retain the fruits of his crime.

expressed Congressional intent to promote security in the work place. Equitable principles that would prevent a criminal from retaining the benefits of his wrongful conduct should not be abrogated "by imputing to Congress a decision which quite clearly it has not undertaken to make." *Penn Dairies, Inc. v. Milk Control Commission*, 318 U.S. 261, 275, 63 S.Ct. 617, 623, 87 L.Ed. 748, 756-57 (1942).

■ The court therefore turns its attention to the equitable, common law principles which govern this case. It is fundamental that the court "will not, in the name of equity, grant relief which is inequitable and unwise." *BBC Investment Co. v. Ginsberg*, 280 Ala. 148, 190 So.2d 702, 706 (1966). To avoid inequities and prevent unjust enrichment, the equity court may impose a constructive trust, thereby denying the wrongdoer the fruits of his misguided labors. The underlying public policy is to deny reward for evil deeds and to remove temptation from others who would attempt to benefit by similar misconduct. The same public policy considerations are presented in the instant case and the law is quite clear on this point. The Alabama Supreme Court has recently reiterated that "[i]t is axiomatic that one is not allowed to profit by his wrongful acts." *Glass v. Adkins*, 436 So.2d 844, 846 (Ala.1983).

■ The application of this maxim has led the equity courts to impose the constructive trust in a variety of circumstances. The beneficiary of a life insurance policy, who feloniously caused the death of the insured, is required to forfeit all rights which he may have had under the policy. *American Life Insurance Co. v. Anderson*, 246 Ala. 588, 21 So.2d 791, 802-03 (1945). Likewise, the felonious slayer has not been allowed to inherit from his victim.

An identical public policy has been evidenced by the Alabama legislature which has clearly expressed its intent "that all perpetrators of criminal activity or conduct be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof." Ala.Code § 15-18-65 (1975).

*See, e.g., Glass v. Adkins,* 436 So.2d 844 (Ala.1983); *Weaver v. Hollis,* 247 Ala. 57, 22 So.2d 525 (1945). The constructive trust has also long been recognized as a vehicle for preventing the unjust enrichment of one who has participated in a fraudulent conveyance. *See, e.g., Coupounas v. Morad,* 380 So.2d 800 (Ala.1980); *Gilliland v. Fenn,* 90 Ala. 230, 8 So. 15 (1890).

The court concludes that the instances in which a constructive trust has been imposed are analogous to the case at bar and that an equitable remedy may be fashioned which does not conflict with the statutory provisions of ERISA. It is "clearly inherent in the very nature of equity proceedings that the trial court is authorized to mold its decree so as to adjust the equities of all parties and to meet the obvious necessities of each situation." 380 So.2d at 803. In the interest of justice and fairness to the victim, the court holds that the plaintiff may garnish the account of the defendant, H. Ray Cox, which is to be held in constructive trust by garnishee, Alabama City Bank of Gadsden. To hold otherwise would be to allow the criminal wrongdoer to be unjustly enriched at the expense of his victim.

By the terms of the plan and the language of ERISA, the result would be different if St. Paul were merely a post-civil suit judgment creditor and did not stand in the shoes of the victim of Cox's crimes.[3] Although St. Paul is technically a judgment creditor, it achieved this status by proceeding, as subrogee of the victim bank, through the legal process to judgment, and now to garnishment in an attempt to enforce its judgment. The status of a creditor who entered into a contract with a defendant and knowingly assumed a predetermined risk of loss is not to be equated with that of the victim of a crime who was subjected to loss through theft and deceit. This is the only possible conclusion. As a matter of common sense, it is certain that Congress did not intend to protect an embezzler from having his assets applied to the payment of a judgment obligation incurred as a result of his crimes. The court finds that the public policy considerations which prompted the ERISA proscription against alienation of pension funds are not applicable in the instant case. To the contrary, public policy dictates that equity protect the victims of crime rather than to favor and aid criminals.

To award the garnishor only the annual pension payments as they are due would be to unreasonably, and therefore unconscionably, delay plaintiff's writ and result in no benefit to defendant. While the value of the fund may increase over time, interest will continue to accrue on the plaintiff's judgment debt. It would be speculative to try to determine which will grow more rapidly, the fund or the judgment. It is true that the plan provides for annual annuity-type pension payments rather than a lump-sum payment of the

---

3. *See United Mine Workers v. Boyle,* 418 F.Supp. 406, 410–11 (D.D.C.1976), wherein the court discussed the public policy exceptions to common law trust principles. Noting that a tort creditor exception has been suggested by various commentators, the court found persuasive the argument that "[c]ertainly, the situation of a tort creditor is quite different from that of a contract creditor. A man who is about to be knocked down by an automobile has no opportunity to investigate the credit of the driver of the automobile, and has no opportunity to avoid being injured no matter what the resources of the driver may be. [paragraph] [I]t can scarcely be denied that there is something shocking in the notion that a settlor may be permitted to immune a beneficiary's interest from the lawful claims of third-party tort creditors ...." 418 F.Supp. at 411.

The *UMW v. Boyle* court went on to deny attachment of the trust funds because "the tort victim and trust settlor [were] one and the same person." 418 F.Supp. at 411. The court reasoned that there was no innocent third-party and that the settlor could have placed the appropriate restrictive language in the trust agreement to protect itself from the situation which occurred. 418 F.Supp. at 411–12. There are no such issues involved in the case at bar. Indeed, St. Paul is elevated beyond the status of a third-party tort creditor to that of a crime victim seeking restitution. The court finds that all of the reasons which support attachment on behalf of the tort creditor are even more compelling when the creditor is the victim of a crime.

entire vested interest. However, the garnishee has no interest in maintaining a principal balance and neither does Cox. Since the judgment against him is much larger than his vested interest in the trust, it seems certain that this fund is totally lost to Cox, regardless of whether the judgment against him is credited with his entire interest in the fund or only the annual installments. The court, therefore, concludes that there is no reason for delay and that, through equitable garnishment, both the interpled accrued annual payments and any vested principal balance may be made presently payable to St. Paul.

For the above stated reasons, the court has determined that the garnishment action instituted by St. Paul against the profit sharing and pension plan funds held by garnishee Alabama City Bank may proceed and that the bank's agent and trustee of the fund be directed to immediately disburse all plan funds which have accrued to the account of H. Ray Cox to the Clerk of this court in response to the garnishment in question. Any future payments from said fund which may come due are to be disbursed directly to St. Paul until such time as the entire judgment, plus accrued interest, is satisfied. In addition, the amounts interpled by the garnishee become payable to St. Paul upon entry of this opinion and the separate order being entered contemporaneously herewith.

### ORDER

This cause is before the court upon plaintiff's motion for condemnation of funds interpleaded in response to a writ of garnishment which the court treats as a motion for summary judgment. The garnishment proceedings were instituted by plaintiff-judgment creditor, St. Paul Fire and Marine Insurance Company, against the pension and profit sharing plan in the name of H. Ray Cox, held by garnishee, Alabama City Bank of Gadsden. Claims against the same funds are also made by Mr. D.E. Locklear. Having considered the writ of garnishment, the pleadings, the submissions of counsel, and the applicable law, the court is of the opinion that there are no genuine issues of material fact, that plaintiff is entitled to judgment as a matter of law, and that satisfaction of plaintiff's judgment debt may be had from the pension trust funds held by garnishee, Alabama Bank of Gadsden. The court further concludes that this fund may not be a source of assets which is subject to attachment for the debts allegedly owed to Mr. Locklear.

Accordingly, it is ORDERED, ADJUDGED and DECREED that:

(1) the claim of D.E. Locklear against the pension fund of H. Ray Cox, held by garnishee Alabama City Bank of Gadsden be and the same hereby is DISMISSED;

(2) the writ of garnishment filed by plaintiff St. Paul Fire and Marine Insurance Company may issue against the pension trust fund held by the garnishee;

(3) any principal balance in the pension fund held by garnishee in which H. Ray Cox has a vested interest be and it hereby is made presently payable to St. Paul Fire and Marine Insurance Company;

(4) the amount interpleaded by the garnishee be and the same hereby is made payable to plaintiff;

(5) the Clerk of this court be and he hereby is DIRECTED to pay to St. Paul Fire and Marine Insurance Company the amount of principal plus accrued interest interpleaded by Alabama City Bank of Gadsden.

A memorandum opinion in conformity with this order is being entered contemporaneously herewith.