## Davies v. Harrison, Jr., et al.

*Trusts and trustees—Spendthrift trusts—Foreign attachment based on judgment in another state for tort.*

1. Under a spendthrift trust, which expressly provides that the income is to be paid as it accrues, and not by way of anticipation, so that it shall not be liable for the *cestui que trust's* debts, contracts or engagements, the principal upon the death of the *cestui que trust* to be assigned to his lawful issue, the income is not subject to a foreign attachment based upon the record of an unsatisfied judgment in the court of a sister state for damages for tort.

2. The recovery of a judgment in a sister state merges therein the original cause of action, so that such original cause of action cannot form the basis of another suit in Pennsylvania; such a suit is based upon a debt of record and is within the class of obligations against which the *cestui que trust* is protected.

3. The word "debts" in such a deed includes judgments for "torts."

Motion for new trial. C. P. No. 4, Phila. Co., Dec. T., 1921, No. 566.

*Latimer P. Smith, Henry A. Craig* and *Ruby R. Vale,* for plaintiff.

*J. Hampton Barnes,* for garnishee.

McCULLEN, J., July 17, 1923.—The plaintiff, La Verne Davies, instituted in this court an action of foreign attachment against Alfred C. Harrison, Jr., defendant, upon the record of an unsatisfied judgment for $150,000 obtained by the plaintiff against the defendant in 1919 in the Supreme Court of New York County, in the State of New York. Under the writ, the plaintiff seeks to attach the property and interests, if any, of the defendant in the possession of The Pennsylvania Company for Insurances on Lives and Granting Annuities, the surviving trustee under a certain deed of trust executed May 3, 1917, by Alfred C. Harrison, the father of the defendant.

On July 24, 1922, in this foreign attachment proceeding judgment was entered against the defendant for want of an appearance, and damages were assessed at $178,250.

On the same day interrogatories were filed, addressed to said garnishee.

Answers thereto (with an amendment) were filed, wherein the garnishee admitted it had in its possession certain income arising under said deed of trust, and payable, in accordance with the terms and provisions thereof, to the defendant, Alfred C. Harrison, Jr.; and contended that because of the spendthrift trust provisions of the deed, this income was not subject to the writ of attachment.

A rule for judgment against the garnishee for want of sufficient answers was discharged after argument.

The garnishee thereupon filed a plea of *nulla bona,* and the cause came on for trial.

At the trial, the plaintiff offered in evidence against the garnishee the interrogatories and answers filed.

The evidence being closed, the garnishee presented a point for binding instructions in its favor. This point was affirmed, and the trial judge, ruling as a matter of law that the income in the possession of the garnishee was not subject to the plaintiff's attachment, directed a verdict for the garnishee.

The plaintiff moves for a new trial.

The deed of trust (a copy of which is annexed to the garnishee's answers filed) was executed by Alfred C. Harrison, the father of the defendant, as settlor or grantor, unto The Pennsylvania Company for Insurances on Lives and Granting Annuities and Arthur E. Newbold as trustees. Therein the settlor assigned, transferred and set over unto the trustees certain bonds and

securities, *in trust,* to collect the income thereof and to pay such income in quarterly or other convenient payments to his son, Alfred C. Harrison, Jr., "for and during the term of his natural life as the same accrue and not by way of anticipation, and so that they shall not be liable for his debts, contracts or engagements," and upon the death of his said son to transfer, assign and deliver the principal of the trust estate to the lawful issue of his said son as in said deed is set forth.

The trust being an executed one, with its limitations fully and perfectly declared, the plaintiff argues that the legal operation thereof is to be determined solely from the language in the instrument creating the trust—that the word "debts," used by the settlor, is to be interpreted in its strict technical sense and with limited meaning, so as to exclude all liabilities originating in torts, and, hence, that the plaintiff's claim in the present instance having arisen out of a tort of the defendant for which the original judgment in New York State was recovered, the funds in the possession of the garnishee are subject to the attachment.

It is conceded to be the established law of this State that one by a trust under a deed or will may so settle his property for the benefit of another for life that the bounty conferred shall not be liable for the debts or obligations of such beneficiary. The plaintiff, however, in arguing that such trusts ought not to be viewed with much favor, because "they are in derogation of the common law right of a creditor to apply by appropriate legal process the property of his debtor to the satisfaction of his debts," overlooks the fact that such trusts are supported, not out of regard for, nor with the desire to aid, the beneficiary in escaping payment of his just obligations, but solely to *protect the donor's right of property.* This is announced with clearness and force in Morgan's Estate, No. 1, 223 Pa. 228, as follows: "The law rests its protection of what is known as a spendthrift trust fundamentally on the principle of *cujus est dare, ejus est disponere.* It allows the donor to condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the *donor has an individual right of property in the execution of the trust, and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's dominion:* Holdship *v.* Patterson, 7 Watts, 547. It is always to be remembered that consideration for the beneficiary does not even in the remotest way enter into the policy of the law; it has regard solely to the rights of the donor. Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone. They allow the donor to so control his bounty, through the creation of the trust, that it may be exempt from liability for the donee's debts, not because the law is concerned to keep the donee from wasting it, but because it is concerned to protect the donor's right of property."

In Patrick *v.* Bingaman, 2 Pa. Superior Ct. 113 (118), the court said: "As the estate in the settlor's hands was not liable to creditors of the beneficiary, it is no fraud to deny them recourse to it in the hands of the trustee."

It is true that "debt," as a technical expression, is defined by Blackstone (3 Blackstone's Commentaries, 154) as meaning "a sum of money due by certain and express agreement."

This, however, is not the only meaning of the word. In 17 Corpus Juris, 1371, it is said: "Judicial definitions of the term 'debt' are numerous. It is a common law word of technical meaning. It has not, however, a fixed or invariable signification, but has several recognized meanings, which vary greatly, according to the subject-matter and the language in connection with

which the word is used. It is used in different statutes and constitutions in senses varying from a very restricted to a very general one. In a purely technical sense, *it is that for which an action of debt* or *indebitatus assumpsit will lie:* a sum of money due by certain and express agreement, etc., etc."

It is not necessary to quote at length from the various dictionaries or lexicons in indication of the comprehensive meaning of the term. In Bouvier's Law Dictionary, "debt" is defined to be "all that is due a man *under any form of obligation* or promise;" and in Brooke *v.* Philadelphia, 162 Pa. 123, the accepted definition is "that which one person is *bound* to pay or perform for another."

Conceding that an unliquidated liability for a tort is not technically a debt, nevertheless, a debt arises when the liability becomes liquidated and is reduced to judgment. It then becomes a *"debt of record,"* which is said to be "a contract of the highest nature, it being established by the evidence of a court of judicature, . . . including all sorts of actions or suits where the judgment is for a sum certain, whatever may be its nature or origin; any specific sum of money adjudged to be due from defendant to plaintiff in an action:" 17 Corpus Juris, 1379.

The plaintiff cites numerous decisions to the effect that the term "debt," when used in statutes imposing personal liability upon stockholders and corporate officers for indebtedness of the corporation, does not include claims arising out of torts, and also (though there are rulings to the contrary) decisions to the effect that, even where the claim for damages for the tort has been reduced to judgment against the corporation, such judgment will not be received as evidence of corporate "debt," within the meaning of the statute, so as to fasten liability upon the stockholder or officer.

These cases we view as wholly inapplicable to the present controversy. They bear upon the construction of statutes penal in their nature, and the object of which is to protect persons *voluntarily dealing with the corporation and trusting its credit.*

In the case before us for consideration we are concerned with the interpretation of a deed of trust.

In what sense is the word "debts" made use of by the settlor? Does he use the word in a restricted sense, as plaintiff contends, or does he use it in a comprehensive sense?

It is fundamental that in the interpretation of deeds, the language is to be taken in the sense which will effectuate the intention of the settlor or grantor as such intention is gathered from the entire instrument.

In Krider *v.* Lafferty, 1 Whar. 303 (314), it is said: "The words in a deed are not the principal thing to be attended to, but the design and intention of the parties: 3 Atk., 135; Plowd., 160. And, accordingly, if the intent of the parties appears, the law will construe the words in such sense as to perform that intent, rather than in any other sense:" Plowd., 154.

In McWilliams *v.* Martin, 12 S. & R. 268 (270), the law is thus stated: "It never was a rule of construction in deeds that the words were to be taken in their technical sense, but according to their proper and most known signification; that which is most vulgar and in use. The necessary use of particular technical expressions is chiefly regarded in the sense of law terms, which matter of description is not; and even where these are used, there is always a presumption in favor of technical meaning and inference, yet it is no more than presumption, and it is to be contradicted by the manifestation of a contrary intention; and the primary inquiry in conveyances, as well as in wills, is the intention, and when that appears on the face of the instrument

as clearly and satisfactorily ascertained, and is not contrary to any rule of law, the court is bound to construe it conformably to the intention." And in Criswell v. Grumbling, 107 Pa. 408 (414), we find this expression: "It may be regarded as settled that even technical words of limitation, found in an executed conveyance, may be so qualified by the context as to make them conform to the intention of the grantor."

In trust limitations the deference to intent becomes the greater. "In limitations of trusts, either of real or personal estates, it is said that the construction, generally speaking, is the same as in the like limitations of legal estates, though with much greater deference to the manifest intent; and, further, that though equity follows the law and applies the doctrines appertaining to legal estates to trusts, yet a court of equity does not hold itself strictly bound by the technical rules of law, but takes a *wider range and more liberal rule in favor of the intention of the parties:*" Ivory v. Burns, 56 Pa. 300, 304.

"The true significance of the instrument must be declared, even though a popular rather than a strict meaning be attached to the particular words:" 26 Ruling Case Law, 1254, title "Trusts."

It is manifest that, as to the income, the object of the settlor's bounty was his son and not those having claims or demands of any kind against the latter. It is clear that the intention of the settlor was that his trustee, on his, the settlor's, behalf, should pay over to the son this income, and pay it in such manner that the same should not be taken for the debts, contracts and engagements of the son. It is reasonable to assume that the settlor used the word "debts" in a sense more comprehensive than would attach to the technical meaning contended for by the plaintiff, which would cover no more than the ordinary contractual liabilities of his son. The settlor uses the word "debts" *in addition* to the word "contracts." Had he meant to cover contractual liabilities only, the word "contracts" alone would have sufficed, but the settlor adds *another* term, viz., "debts," which apparently was to include something *not* covered by the term "contracts." Unless we so conclude, the use of the word "debts" was without purpose.

In the interpretation of spendthrift trust provisions, the word "debt" has been viewed by our courts as of comprehensive import.

In Thackara v. Mintzer, 100 Pa. 151, the beneficiary having been ordered to make payment of alimony for the support of his wife, it was sought to enforce payment by attachment against the funds which had been directed to be paid to the beneficiary free from his debts and liabilities. In holding that the income in the hands of the trustee was not subject to the attachment, the Supreme Court said: "It is contended that the character of the debt in this case, on which the attachment issued, is not within the meaning of the testator's exemption. It is for alimony awarded by the court to the wife of George, after a verdict and judgment against him, for a divorce *a mensa et thoro*, in her favor. The attachment issued *on a debt of record fixed by judgment and decree.*"

In Board of Charities v. Lockard, 198 Pa. 572, it was held that such income could not be reached upon a warrant of seizure issued under the Desertion Act for the maintenance of the wife and child of the *cestui que trust.* Like doctrine was announced in Com. v. Thomas, 65 Pa. Superior Ct. 275.

Having thus considered the propositions advanced by the plaintiff in argument, we may say, in conclusion, that a complete answer to the plaintiff's contention rests in the fact that we are not permitted to consider the original cause of action (the tort committed in New York) as the basis of this foreign attachment proceeding, for the following reasons:

3 D. & C.

1. Foreign attachment was originally confined to actions *ex contractu* and did not lie for a demand founded in tort: Boyer *v.* Bullard, 102 Pa. 555, and cases there cited.

Whilst the law has been amended so as to permit the writ to issue in actions *ex delicto*, for torts, the extension is limited to cases *where the torts have been committed within this Commonwealth:* Act of March 30, 1905, P. L. 76-77.

2. The recovery of the judgment in New York State merged therein the original cause of action so that it cannot form the basis of another suit in Pennsylvania: Baxley *v.* Linah, 16 Pa. 241; Brenner Truck Co. *v.* Moyer, 98 Pa. 274 (279).

"The recovery of a judgment in one state merges the original cause of action so that it cannot thereafter form the basis of a fresh suit in another state:" 23 Cyc., 1549-1550.

3. The plaintiff has in fact sued upon his judgment (a debt of record), as to which "the law imports a contract to pay:" Eby *v.* Burkholder, 17 S. & R. 9.

In his statement of claim and in his affidavit of cause of action the plaintiff avers that this judgment "remains of full force, not annulled, reversed or satisfied," and that it "remains due."

Being of opinion that the income in the hands of the garnishee is not subject to the writ of attachment, a new trial is refused.