826 A.2d 416

Robert Ryon DUVALL, et al.

v.

James Calvert McGEE, et al.

No. 39, Sept. Term, 2002.

Court of Appeals of Maryland.

June 16, 2003.

Allen W. Cohen (Cohen & Greene, P.A., on brief), Annapolis, for appellants.

Ronald A. Baradel (Council, Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

The issue presented for resolution by this case is whether a tort judgment may be satisfied by invading the principal of a spendthrift trust held for the benefit of the tortfeasor. The Circuit Court for Anne Arundel County, recognizing that Maryland law only allows invasion of a spendthrift trust by a narrow class of creditors, and, only in limited circumstances, declined to expand the class or the circumstances. It opined that to hold that tort judgment creditors are among the class of creditors that have traditionally been allowed to invade a spendthrift trust in satisfaction of a judgment, would be to "rewrite" Maryland law. Such a revision of Maryland law, it pointed out, is properly addressed by the Maryland General Assembly or this Court. We shall affirm the judgment of the Circuit Court.

## I.

James Calvert McGee ("McGee"), one of the appellees in the case *sub judice,* was convicted of felony-murder for his participation in a robbery that resulted in the killing of Katherine Ryon.[1] Robert Ryon Duvall, the appellant, is the Personal Representative of the Estate of Katherine Ryon. He brought suit, in that capacity, in the Circuit Court for Anne Arundel County against McGee, seeking both compensatory

---

1. *See State of Maryland v. McGee,* Case No. K–95–933 Anne Arundel Circuit Court, aff'd by Court of Special Appeals, unreported (No. 1224, 1996 Term), *cert. denied* by 346 Md. 630, 697 A.2d 914 (1997).

and punitive damages, plus costs of the suit,[2] for the battery of Katherine Ryon and the conversion of her personal property. The parties settled this action, negotiating and executing an Agreement for Entry of Judgment/Partial Release of Claims ("Settlement Agreement"), pursuant to which, in satisfaction of the conversion count, the parties agreed to the entry of judgment against McGee, and in favor of the appellant, for $100,000.00 in compensatory damages and $500,000.00 in punitive damages.[3] The Settlement Agreement acknowledged that McGee is the beneficiary of a trust established by his deceased mother, which, at the time of the settlement, was valued at approximately $877,000.00, exclusive of early withdrawal penalties and taxes. Under the terms of the trust, periodic monetary payments are to be made to McGee, and to others on his behalf, by Frank B. Walsh, Jr., the Trustee of the trust ("the Trustee)," the other appellee in the case *sub judice.* Another provision of the trust established what is commonly referred to as a "Spendthrift" Trust.[4] That provision prohibited McGee from alienating the trust principal ("corpus") or any

---

2. In addition to the costs of the suit, the count of the complaint alleging battery, the appellant sought $100,000.00 in compensatory damages and $10,000,000.00 in punitive damages and in the conversion count, he requested an additional $100,000.00 in compensatory damages and 1,000,000.00 in punitive damages.

3. Because McGee averred that he did not participate in the actual killing of Ms. Ryon, the Settlement Agreement requested a dismissal with prejudice of the battery allegation.

4. Restatement (Second) of Trusts § 152(2) (1959) defines a "spendthrift trust" as "[a] trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed...." The validity of the provision creating the spendthrift trust is not in dispute. We have stated, with regard to the prerequisites of such trusts that the creator of the trust need only manifest the intention either expressly or impliedly in the instrument creating the trust, that the beneficiaries thereunder shall be entitled to their equitable interests in the trust property, free from the claims of their creditors. *Cherbonnier v. Bussey,* 92 Md. 413, 421, 48 A. 923, 924 (1901). Both parties have argued that Sally McGee established a valid Spendthrift Trust. Consequently, we express no opinion upon the validity of the language used to create the spendthrift protection feature of the Trust.

portion of the income from the trust while in the hands of the Trustee, and specifically shielded both the corpus and the income from claims of McGee's creditors. The trust instrument also gives broad discretion to the Trustee to terminate the Trust at any time and pay the trust assets and any undistributed income to McGee or to any of the remaindermen to which the trust referred.[5] The Settlement Agreement also provided that:

---

**5.** The pertinent language of the Trust instrument reads:

"I hereby devise and bequeath all the rest and residue of my estate of whatsoever character, whensoever acquired and wheresoever situated, and to which I or my estate may in any manner be entitled at the time of my death, to the trustee or trustees named hereinafter, IN TRUST, NEVERTHELESS, for the following purposes:

"To pay to or for the benefit of my son, JAMES CALVERT McGEE, such sums from the *income and/or principal* of said trust funds as my trustee shall deem reasonable and necessary, in the exercise of his sole and absolute discretion, in order to provide property for the health, maintenance, support, training, education and general welfare of my aforesaid son, for and during my son's lifetime.

\* \* \*

"*I direct that my trustee may, in his sole and absolute discretion, whenever and in whatever form he deems advisable, terminate the terms of the aforesaid trust by paying over the then remaining trust by paying over the then remaining trust assets and any undistributed income, absolutely, to my son and/or any of the persons or institutions named in the following paragraphs.*

"I direct that, upon the death of my son, if he has survived me; or upon my death, if my son predeceases me; or upon the trustee's election to terminate the said trust; my trustee shall distribute absolutely, the then remaining balance of the income and principal of said trust to any one or more of the following persons, classes of persons or institutions:

"A. My son;
"B. Spouse of my son;
"C. Children of my son or their issue;
"D. Charitable Organizations;
"E. Medical Institutions;
"F. Educational Institutions;
"G. Religious Institutions.

"Provided, however, that my trustee may in his sole discretion ad [sic] absolute discretion continue to hold said assets and/or income or any part thereof in trust for any of the persons named in line A, B and C above.

\* \* \*

"*No interest of any beneficiary of this Will or any rust [sic] created thereby shall be assignable in anticipation of payment thereof in whole*

"The [appellant] hereby forever releases, waives, relinquishes and abandons any rights he may have to satisfy or have paid any portion of the above-mentioned judgment by way of attachment, garnishment or any other post-judgment collection efforts directed against any periodic payments made by the Trustee of the Trust to [McGee] as the beneficiary of the Trust, or directed against any periodic payment made to any other person or entities for the benefit of [McGee]. The amount of any periodic payments which are immune to such post judgment collection efforts hereunder shall not exceed the amount of the periodic payment previously made during the preceding three (3) years, exclusive of payments made for legal fees. The parties understand and specifically agree that the Trustee will continue to pay the legal fees on behalf of [McGee] and such payment of legal fees shall be immune to any post-judgment collection efforts as outlined above. [McGee] agrees that he shall provide an annual accounting in August of each year beginning in the year 2002 outlining the periodic payments received by him or made to others on his behalf (exclusive of legal fees) during the preceding year."

Thus, it prohibited the appellant from attaching or garnishing any of the periodic payments the Trustee made to McGee from the Trust.

Having surrendered all rights to attach McGee's periodic payment from the Trust, but armed with the judgment entered pursuant to the Settlement Agreement, the appellant sought to satisfy the judgment by invading the corpus of the

---

or in party by the voluntary or involuntary acts of any such beneficiary or by operation of law. Neither the corpus of any trust created hereby, nor the income resulting therefrom, while in the hands of my fiduciaries, shall be subject to any conveyance, transfer, or assignment, or be pledged as security for any debt or obligation of any beneficiary thereof, and the same shall not be subject to any claim of any creditor of any such beneficiary through legal process or otherwise. Any such attempted sale, anticipation, or pledge of any of the funds or property held in any such trust or will, or the income therefrom, by any beneficiary shall be null and void, and shall not be recognized by my fiduciaries." (emphasis added).

trust. Thus, the appellant served a Writ of Garnishment on the Trustee. Answering the Writ, the Trustee defended on the grounds that the trust was a spendthrift trust; the Trustee was not indebted to McGee; and the Trustee was not in possession of any property belonging to McGee.

Both parties moved for summary judgment. Although acknowledging that this Court, in *Smith v. Towers,* 69 Md. 77, 14 A. 497 (1888), upheld the validity of spendthrift trusts in Maryland and, thus, prohibited their invasion for the payment of debt, the appellant maintained that, over time, this Court has carved out, on public policy grounds, exceptions to the spendthrift doctrine, pursuant to which some classes of persons are permitted to invade spendthrift trusts. Noting one of the rationales of the *Smith* decision—that because "[a]ll deeds and wills and other instruments by which [spendthrift] trusts are created are required by law to be recorded in the public offices ... creditors have notice of the terms and conditions on which the beneficiary is entitled to the income of the property," 69 Md. at 89, 14 A. at 499—the appellant argued that tort-judgment creditors should be included among those excepted, since such creditors had no opportunity to investigate the credit-worthiness of the tortfeasor prior to suffering from the tortious conduct giving rise to the claim. Furthermore, the appellant continued, the public policy of this State dictates that tort-judgment creditors be deemed a special class of creditors entitled to invade a spendthrift trust.

The trial court held:

"Maryland law is what governs this case, however, and Maryland law is clear. A spendthrift trust may not be reached in order to satisfy the judgment in the case *sub judice.* Although the facts involving the murder of the late Ms. Ryon, and the further facts relating to the beneficiary status of the Defendant McGee, a felony murderer, are very tempting, this Court may not rewrite the law; the Maryland Legislature has the responsibility of that task, or the Appellate Courts of this State must further interpret the law.... This Court has a responsibility to apply and uphold the laws

of the state as its interprets they now exist, not create new law."

Thus, the appellant's motion for summary judgment was denied and the appellees' cross-motion, granted. The appellant noted a timely appeal to the Court of Special Appeals. This Court, on its own initiative, issued the writ of certiorari to address this novel issue of Maryland law, prior to any proceedings in the intermediate court. *Duvall v. McGee*, 369 Md. 570, 801 A.2d 1031 (2002).

In this Court, the appellant argues that the public policy of this State favors a rule allowing a tort-judgment creditor's claim to be satisfied by invading the corpus of a spendthrift trust. He directs our attention to Maryland precedent, reflecting the recognition of spendthrift trusts, the rationale for that recognition and the development of exceptions to the spendthrift trust doctrine. More particularly, the appellant relies on Maryland's public policy against permitting criminals to benefit financially from their crimes. As to that, he relies on the Maryland statute, known as the "Son of Sam" statute, enacted to prevent criminals from profiting from their own crimes through "notoriety of crimes contracts," *Curran v. Price*, 334 Md. 149, 154, 638 A.2d 93, 96 (1994), and the like, *see* Md.Code (1957, 1992 Repl.Vol., 1993 Cum.Supp.), Article 27, § 854;[6] this Court's creation in the common law of this State of a "slayer's rule," pursuant to which a person who kills another is prohibited from being tangibly enriched by the death. *Ford v. Ford*, 307 Md. 105, 107–08, 512 A.2d 389, 390 (1986); *Schifanelli v. Wallace*, 271 Md. 177, 315 A.2d 513 (1974); *Chase v. Jenifer*, 219 Md. 564, 150 A.2d 251 (1959); *Price v. Hitaffer*, 164 Md. 505, 165 A. 470 (1933); and Maryland Code (1973, 2002 Repl.Vol.), §§ 5–1001–*et seq.* of the Courts and Judicial Proceedings Article (Prisoner Litigation Act, requiring Department of Correction to notify victim's

---

6. That is the statute in effect when this case was decided. As a result of Code Revision, it is now codified at Md.Code Ann., Criminal Procedure, § 11–622 (2001). The Revisor's note indicates that it was re-codified without substantive change.

family if a prisoner successfully prosecutes a civil action and is awarded compensatory or punitive damages).

By way of rebuttal, the appellees counter that accepting the appellant's argument would require and, thus, constitute a change in Maryland law and, in any event, the public policy goals argued by the appellant will not be advanced by allowing garnishment of a spendthrift trust by a tort-judgment creditor under the circumstances of the case *sub judice.* As to the former, the appellees emphasize that the obligations, for the satisfaction of which this Court has allowed invasion of the corpus and income of a spendthrift trust have not been simple or ordinary contract debt; rather they have been "... dut[ies], not ... debt." *Safe Deposit & Trust Co. of Baltimore v. Robertson,* 192 Md. 653, 662, 65 A.2d 292, 296 (1949). *See Zouck v. Zouck,* 204 Md. 285, 298, 104 A.2d 573, 579–80 (1954) (equating a contract for child support to "the decree of a court awarding support to the child or alimony to a wife."). With respect to the latter, they argue that the public policy against a criminal benefitting from his or her crime is simply inapplicable to the case *sub judice.* The payments that McGee receives, they maintain, are in no way related to the crime that he committed. As important, the appellees point out, those payments are not even involved in the case, the parties, by their settlement agreement, having expressly exempted them from attachment.

## II.

In Maryland, it is well settled that "spend-thrift trusts" may be created. *E.g., Brent v. State of Md. Cent. Collection Unit,* 311 Md. 626, 631, 537 A.2d 227, 229 (1988); *Jackson Square Loan & Savings Ass'n. v. Bartlett,* 95 Md. 661, 53 A. 426, (1902); *Brown v. McGill,* 87 Md. 161, 163–164, 39 A. 613, 613–614 (1898); *Reid v. Safe–Deposit Co.,* 86 Md. 464, 467, 38 A. 899, 900 (1897); *Md. Grange Agency v. Lee,* 72 Md. 161, 163, 19 A. 534, 535 (1890); *Smith v. Towers, supra,* 69 Md. at 88–90, 14 A. at 499–500. This Court first recognized the validity of "spendthrift" trusts, in *Smith v. Towers, supra,* concluding that the income from, and corpus of, such trusts

are not subject to attachment or garnishment in the hands of the trustee. It is useful to review the rationale of that case.

In *Smith,* one of the judgment debtors was beneficiary of a trust, which provided for the trustee to collect the rents and the profits of the real estate that formed its corpus, for payment to him, "into his own hands, and not into another, whether claiming by his authority or otherwise," *id.* at 83, 14 A. at 497, and, upon his death, to convey the real estate to the beneficiary's surviving children. *Id.* The appellant, having obtained a judgment against the beneficiary of the trust and another, sought to satisfy the judgment by attaching the income from the trust.

Perceiving that the case presented two issues: whether the testator intended to give the income of the property to his son to the exclusion of his creditors and, if so, whether the terms and provisions of the will effected that intention, 69 Md. at 83, 14 A. at 497, the Court had little difficulty resolving the first. As to that, we held:

"He not only gives the legal estate to the trustee, but he directs in express terms that he shall pay the income into the hands of his son and not into the hands of any other person, whether claiming by his authority, or in any other capacity. Here then, is an express provision, that the income shall be paid to his son, and an express prohibition against paying it to any other person. If the income in the hands of the trustee is liable to the claims of creditors, the trustee it is plain could not carry out the trust. So construing this will as we do, and it is not we think susceptible of any other construction, the testator meant beyond all question that the income should be paid into the hands of his son, to the the [sic] exclusion of all other persons, whether claiming as alienees or as creditors."

*Id.* at 84, 14 A. at 497. Turning to the next issue, we acknowledged that the English decisions and, indeed, those of a majority of the States deciding the issue, held that a necessary incident to the holding of an equitable estate, or an interest for life, was the right of alienation by the beneficiary,

with the result that, without regard to provisions by way of limitation or otherwise, such estates are "liable for the payment of [the beneficiary's] debts." *Id.* This Court rejected the two grounds on which those decisions rested, *i.e.,* "that the right of alienation is a necessary incident to an equitable estate for life, and any restraint upon this right is against the policy of the law which favors the ready alienation of property; and ... that public policy forbids that one should have the right to enjoy the income of property, to the exclusion of his creditors," *id.* at 87, 14 A. at 498, and, concluding that "the gift of an equitable right to the income from property for the life of the beneficiary, to the exclusion of his alienee," *id.* at 88, 14 A. at 499, is neither a restraint on the right of alienation nor against public policy, reached the opposite result.

Our reasoning is instructive on the issue *sub judice.* Acknowledging the rule favoring the free and ready alienation of property and that "the right to sell and dispose of property ... is a necessary incident of course to the absolute ownership of ... property," *id.* at 87, 14 A. at 498, we pointed out that "the reasons on which the rule is founded do not apply to the transfer of property in trust," *id.* at 87, 14 A. at 499, and that "[t]he law does not ... forbid all and any restraints on the right to dispose of [trust property], but only such restraints as may be deemed against the best interests of the community." *Id.* at 88, 14 A. at 499. With regard to the policy issue, we said:

"Now common honesty requires, of course, that every one should pay his debts, and the policy of the law for centuries has been to subject the property of a debtor of every kind which he holds in his own right, to the payment of his debts. He has as owner of such property the right to dispose of it as he pleases, and his interest is, therefore, liable for the payment of his debts. But a *cestui que trust* does not hold the estate or interest in his own right; he has but an equitable and qualified right to the property or to its income, to be held and enjoyed by the beneficiary on certain terms and conditions prescribed by the founder of the trust. The legal title is in the trustee, and the *cestui que trust*

derives his title to the income through the instrument by which the trust is created. The donor or devisor, as the absolute owner of the property, has the right to prescribe the terms on which his bounty shall be enjoyed, unless such terms be repugnant to the law. And it is no answer to say that the gift of an equitable right to income to the exclusion of creditors is against the policy of the law. This is begging the question. Why is it against the policy of the law? What sound principle does it violate? The creditors of the beneficiary have no right to complain, because the founder of the trust did not give his bounty to them. And if so, what grounds have they to complain because he has seen proper to give it in trust to be received by the trustee and to be paid to another, and not to be liable while in the hands of the trustee to the creditors of the *cestui que trust*. All deeds and wills and other instruments by which such trusts are created, are required by law to be recorded in the public offices, and creditors have notice of the terms and conditions on which the beneficiary is entitled to the income of the property. They know that the founder of the trust has declared that this income shall be paid to the object of his bounty to the exclusion of creditors, and if under such circumstances they see proper to give credit to one who has but an equitable and qualified right to the enjoyment of property, they do so with their eyes open. It cannot be said that credit was given upon such a qualified right to the enjoyment of the income of property, or that creditors have been deceived or mislead; and if the beneficiary is dishonest enough not to apply the income when received by him to the payment of his debts, creditors have no right to complain because they cannot subject it in the hands of the trustee to the payment of their claims, against the express terms of the trust."

*Id.* at 88–89, 14 A. at 499–500.

The appellant relies on that portion of the Court's reasoning that indicates that the contract creditors are on notice, at least constructively, of the terms of the spendthrift trust prior to extending credit, along with the fact that this Court, on public

policy grounds, has exempted certain obligations of the beneficiary of a spendthrift trust from the rule against attachment or garnishment of the corpus or of the income in the hands of the trustee. He also takes comfort from the position that treatise writers take with respect to the right of tort judgment creditors to satisfy their judgments from a spendthrift trust; they agree with him that it should be permitted.

In Scott on Trusts, Fourth Edition, § 157.5, while acknowledging the paucity of authority on the subject, it is stated:

"In many of the cases in which it has been held that by the terms of the trust the interest of a beneficiary may be put beyond the reach of his creditors, the courts have laid some stress on the fact that the creditors had only themselves to blame for extending credit to a person whose interest under the trust had been put beyond their reach. The courts have said that before extending credit they could have ascertained the extent and character of the debtor's resources. Certainly, the situation of a tort creditor is quite different from that of a contract creditor. A man who is about to be knocked down by an automobile has no opportunity to investigate the credit of the driver of the automobile and has no opportunity to avoid being injured no matter what the resources of the driver may be. It may be argued that the settlor can properly impose such restrictions as he chooses on the property that he gives. But surely he cannot impose restrictions that are against public policy. It is true that the tortfeasor may have no other property than that which is given him under the trust, and that the victim of the tort is no worse off where the tortfeasor has property that cannot be reached than he would be if the tortfeasor had no property at all. Nevertheless, there seems to be something rather shocking in the notion that a man should be allowed to continue in the enjoyment of property without satisfying the claims of persons whom he has injured. It may well be held that it is against public policy to permit the beneficiary of a spendthrift trust to enjoy an income under the trust without discharging his tort liabilities to others.

"There is little authority on the question whether the interest of the beneficiary of a spendthrift trust can be reached by persons against whom he has committed a tort. In the absence of authority it was felt by those who were responsible for the preparation of the Restatement of Trusts that no categorical statement could be made on the question. It is believed, however, that there is a tendency to recognize that the language of the earlier cases to the effect that no creditor can reach the interest of a beneficiary of a spendthrift trust is too broad, and that in view of the cases that have been cited in the previous sections allowing various classes of claimants to reach the interest of the beneficiary, the courts may well come to hold that the settlor cannot put the interest of the beneficiary beyond the reach of those to whom he has incurred liabilities in tort."

Bogert on Trusts and Trustees, Second Edition, Rev'd, § 224, p. 478, is to like effect:

"[A] person who has a claim for damages against a spendthrift trust beneficiary, based on the commission of a tort or other wrongful act (not including a mere breach of contract) should be allowed to secure satisfaction from the interest of the beneficiary, apparently on the ground that the contrary result would be against public policy. It is true that a tort creditor has no chance to choose his debtor and cannot be said to have assumed the risk of the collectability of his claim. The argument for the validity of spendthrift trusts, based on the notice to the business world of the limited interest of the beneficiary does not apply. It may be argued that the beneficiary should not be permitted to circumvent the case and statute law as to liability for wrongs by taking advantage of the spendthrift clause."

A similar sentiment is expressed in Comment a to § 157 of the Restatement Second of Trusts, wherein it is said:

"The interest of the beneficiary of a spendthrift trust ... may be reached in cases other than those herein enumerated [alimony, child support, taxes], if considerations of public policy so require. Thus, it is possible that a person who has

a claim in tort against the beneficiary of a spendthrift trust may be able to reach his interest under the trust."

Neither the argument advanced by the appellant, nor the support offered for it is persuasive.

To be sure, this Court has refused to hold, and on public policy grounds, spendthrift trusts inviolate against indebtedness for alimony arrearages, *Safe Deposit & Trust Co. v. Robertson, supra,* 192 Md. at 662–63, 65 A.2d at 296, and for child support. *Zouck v. Zouck, supra,* 204 Md. at 299, 104 A.2d at 579.[7] Earlier, the United States District Court for the District of Maryland had reached the same result, permitting a spendthrift trust to be attached for the payment of United States income taxes. *Mercantile Trust Co. v. Hofferbert,* 58 F.Supp. 701, 705 (D.Md.1944). Although decided on policy grounds, *see,* Article III, Section 38 of the Maryland Constitution [8] (providing that no person shall be imprisoned for failure

---

**7.** In *Prince George's County Police Pension Plan v. Burke,* 321 Md. 699, 584 A.2d 702 (1991), the issue was the power of the court to "order, as part of a marital property award, the transfer of a partial interest in a government pension plan to the former spouse of the participant employee" and "when payable, the direct disbursement of a fractional share of benefits to the participant's former spouse." *Id.* at 700, 584 A.2d at 703. Answering that the court had such power, the Court explained:

> "Whether the pension is a spendthrift trust is immaterial to the issue at hand. The husbands' pensions are not being used to discharge debts that they owed to their wives. Rather, the courts called for the equitable distribution of marital property and ordered that each spouse be paid his or her rightful portion as it becomes due .... when a pensioner becomes eligible to collect, the spouse becomes eligible to collect his or her share as a co-owner, not as a creditor."

*Id.* at 707, 584 A.2d at 706 (footnote omitted). *See Foley v. Foley,* 1997 Conn.Super.Lexis 2948, *21 (after explaining that the purpose of the spendthrift provision in a police pension statute was to protect the employee from creditors, the court pointed out that "[a] spouse is not a creditor. Once the court exercises its power to transfer ownership rights in a pension or retirement plan, the ex-spouse, non employee becomes an owner of a portion of the plan, not a creditor.").

**8.** Article III, Section 38 of the Maryland Constitution provides that

> "No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for the

to pay a debt, but expressly excluding from the definition of debt valid court decrees for the payment of support or alimony); *Robertson, supra,* 192 Md. at 663, 65 A.2d at 296 ("We rest our decision upon grounds of public policy, not upon any interpretation of the instruments in question, which are not broad enough to authorize payments by the trustee for the benefit of a divorced wife." [9]); *Zouck, supra,* 204 Md. at 299, 104 A.2d at 579 (noting that "a contract by a father to support a child, found by a court to be fair and reasonable, and so, judicially decreed to be enforced, is the equivalent of the decree of a court awarding support to the child or alimony to a wife, and as such, comes within the rule of public policy announced and followed in the *Robertson* case"); *Hofferbert,* 58 F.Supp. at 705 (observing that the public policy involved when claims of creditors are pitted against the validity of a spendthrift trust is "quite different" when the claim is by the government for taxes); none of these cases was premised on there having been a lack of notice given to the claimants as to the trust beneficiary's limited interest in the trust. Rather, the courts recognized a fundamental difference between these obligations and those of ordinary contract creditors.

In *Robertson,* we, like 1 Scott, Trusts, § 157.1, recognized, and clearly stated, that the dependents of a spendthrift trust beneficiary " 'are not 'creditors' of the beneficiary, and the liability of the beneficiary to support them is not a debt.' " 192 Md. at 660, 65 A.2d at 295, quoting Scott. Scott explained that these dependents, the beneficiary's wife and children, could enforce their claim for support against the trust estate, because "it is against public policy to permit the beneficiary to have the enjoyment of the income from the trust while he refuses to support his dependents whom it is his duty to

---

support of an illegitimate child or children, or for alimony, shall not constitute a debt within the meaning of this section."

9. The Court described the public policy it applied as follows: "In [the case of claims for support or alimony] the wife is a favored suitor, and her claim is based upon the strongest grounds of public policy." *Safe Deposit & Trust Co. v. Robertson,* 192 Md. 653, 663, 65 A.2d 292, 296 (1949).

support, *id.* at 661, 65 A.2d at 295, their claim being "in quite a different position from the ordinary creditors who have voluntarily extended credit." *Id.* Focusing specifically on alimony, at issue in that case, the Court opined:

> "We think the view expressed in the Restatement[10] is sound. The reason for the rejection of the common law rule, that a condition restraining alienation by the beneficiary is repugnant to the nature of the estate granted, was simply that persons extending credit to the beneficiary on a voluntary basis are chargeable with notice of the conditions set forth in the instrument. . . . This reasoning is inapplicable to a claim for alimony which in Maryland at least, is 'an award made by the court for food, clothing, habitation and other necessaries for the maintenance of the wife. . . .' The obligation continues during the joint lives of the parties, and is a duty, not a debt."

*Id.* at 662, 65 A.2d at 296 (citations omitted). *See, also McCabe v. McCabe,* 210 Md. 308, 314, 123 A.2d 447, 450 (1956) ("This Court has held that alimony represents a duty and not a debt."); *Oles Envelope Corp. v. Oles,* 193 Md. 79, 92, 65 A.2d 899, 905 (1949) ("The obligation to pay alimony in a divorce proceeding is regarded not as a debt, but as a duty growing out of the marital relation and resting upon sound public policy."). Compare *Hitchens v. Safe Deposit & Trust Co. of Baltimore,* 193 Md. 62, 67, 66 A.2d 97, 99 (1949) (specifically declining to apply the rule announced in *Robertson* to claims for support that were not judicially-decreed alimony, but arose pursuant to a contractual agreement to pay money).

---

**10.** Restatement of Trusts, § 157 provided:

"Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

"(a) by the wife or child of the beneficiary for support, or by the wife for alimony;

"(b) for necessary services rendered to the beneficiary or necessary supplies furnished to him;

"(c) for services rendered and materials furnished which preserve or benefit the interest of the beneficiary."

Similarly, in *Zouck*, the Court drew a distinction between the considerations underlying the balance when the monetary obligation sought to be satisfied is a contract or ordinary debt and when it is child support. It noted that the monetary claim in that case was "based, in essence, upon the statutory obligation of the father, declaratory of the common law, to support his child." 204 Md. at 298, 104 A.2d at 579. *See Walter v. Gunter*, 367 Md. 386, 398, 788 A.2d 609, 616 (2002) ("This Court historically has recognized a distinction between a standard debt and a legal duty in domestic circumstances, specifically with respect to child support, and subscribes to the theory that child support is a duty not a debt."); *Middleton v. Middleton*, 329 Md. 627, 629–33, 620 A.2d 1363, 1364–66 (1993)(analyzing the debt/duty distinction with respect to parental child support obligation). Moreover, pointing out that in this case, the father agreed to meet the parental obligation to support his child by the payment of $ 25.00 a week, and to this extent, exonerated the child's mother from her obligation, the Court was emphatic:

"The fact that the father has recognized his obligation and has agreed in writing to meet it in a specified amount, does not change his duty to a debt nor does it create the relationship of ordinary contract debtor and creditor between the father and the child, or the father and the mother, as the representative of or trustee for the child. . . . His obligation remains the same whether it be calculated and required by original order of court, by voluntary agreement, or by voluntary agreement specifically ordered to be performed by order of court. Nor is it significant that the mother for some years has met the obligation which the father violated, so that the money he promised to pay week by week, would now be paid, under court order, in a lump sum . . . . The fundamental nature of the support looked for by the agreement is not changed because the husband is now required to pay at one time what he should have paid week by week."

*Zouck, supra*, 204 Md. at 298–99, 104 A.2d at 579 (citations omitted). We also made the point that, "[i]n the case of a

child, the obligation of the father to support, imposed by law, cannot be bargained away or waived." *Id.* The Court concluded, "the agreement by a parent to support a child, declared to be reasonable and proper, and so, enforceable by a court, constitutes an obligation which justifies the invasion of a spendthrift trust for its fulfillment." *Id.* at 300, 104 A.2d at 580.

Similarly, the obligation to pay taxes and, thus, tax arrearages, is not to be considered debt, nor is the government to be viewed as a mere creditor. Addressing and resolving this very point, the *Hofferbert* court distinguished the public policy underlying the tax obligation and that underlying ordinary or contract debts:

> "The reasons which have actuated some courts, as in Maryland, to uphold spendthrift trust against the claims of a creditors do not necessarily apply to tax claims of the government either federal or State. The public policy involved is quite different. In the one case the donor of the property has the right to protect the beneficiary against his own voluntary improvident or financial misfortune; *but in the other the public interest is directly affected with respect to collection of taxes for the support of the government.* The imposition of the tax burden is not voluntary by the beneficiary."

*Hofferbert, supra,* 58 F.Supp. at 706 (emphasis added).

 Ms. Ryon's estate is a mere judgment creditor of McGee, the beneficiary. The Trust simply has no legal duty to Ms. Ryon's estate and certainly no obligation to provide support. Thus the rationale underlying the decisions permitting the invasion of a spendthrift trust for the payment of alimony, child support or taxes have absolutely no applicability to the obligation in this case. Indeed, to permit the invasion of the Trust to pay the tort judgments of the beneficiary, in addition to thwarting the trust donor's intent by, in effect, imposing liability on the Trust for the wrongful acts of the trust beneficiary, is, as the appellees argue, to create an exception for "tort victims" or "victims of crime."

By equating, for purposes of determining whether to permit invasion of a spendthrift trust, the tort judgment creditor with the dependents of a trust beneficiary, to whom the beneficiary has a duty of support, or to the government, that is owed a duty to pay taxes, we would create a distinction between debts and creditors and a basis for exempting such creditors from the impediment to recovery that spendthrift trusts present. The appellant offers a rationale for drawing the distinction, whether the interests of the creditor are "great enough" to permit invasion of the trust. He relies on a portion of our discussion of the validity of spendthrift trusts in *Hoffman Chevrolet, Inc. v. Washington County Nat. Sav. Bank,* 297 Md. 691, 467 A.2d 758 (1983). After acknowledging that Maryland generally recognizes the validity of spendthrift provisions, which prevent creditors from reaching trust funds and concluding that, by "logical extension ... a spendthrift trust can effectively protect retirement benefits," *id.* at 706, 467 A.2d at 766, we commented: "The employer makes contributions to the trust to provide for the employee upon retirement. The creditor's interests are not great enough to permit an invasion of this trust." *Id.* From this comment, the appellant concludes: "... the Court accepted the concept that certain creditors' interests *can be* great enough to ignore the 'spendthrift' terms of a trust." (Appellant's Brief at 7).

We are not convinced. This is a very slender reed on which to base such an important concept. Moreover, given the context of the Court's comment, it is not at all inconsistent with *Robertson* or *Zouck.*[11]

---

11. The appellant argues that McGee has invaded the Trust corpus to pay legal fees in connection with his criminal trial and appeals to overturn his conviction. McGee does not have authority to compel either the termination of the trust or payments under the trust. The Trust grants full authority and discretion to the Trustee to decide those questions. McGee may request the Trustee to use the trust corpus to pay for his defense and that could be done if, in the discretion of the Trustee, that use of the corpus is deemed acceptable. A different situation is presented if the Trustee were to terminate the trust and pay the trust corpus to McGee. The issue then would be whether that

To be sure, the Supreme Court of Mississippi quite recently held that, "as a matter of public policy ... a beneficiary's interest in spendthrift trust assets is not immune from attachment to satisfy the claims of the beneficiary's intentional or gross negligence tort creditors." *Sligh v. First National Bank of Holmes County,* 704 So.2d 1020, 1029 (Miss.1997). There, the plaintiff and his wife brought suit against an uninsured and intoxicated motorist/defendant for injuries arising from a traffic accident which resulted in the plaintiff's paralysis. The defendant was the beneficiary under two spendthrift trust established by his late mother. Having obtained a default judgment for $5,000,000 in compensatory and punitive damages in their action alleging gross negligence, the plaintiffs sought to attach the defendant's interest under the spendthrift trusts.

In arriving at its holding, the court acknowledged the four exceptions to the rule prohibiting the invasion of a spendthrift trust enumerated in the Restatement, *i.e.,* claims: for support of child or wife; for necessaries; for "services rendered and materials furnished which preserve or benefit the interest of the beneficiary; for State or federal taxes, *id.* at 1026, quoting Restatement (Second) of Torts, § 157, and a fifth, when the trust is 'a self-settled trust, i.e., where the trust is for the benefit of the donor,' it had itself recognized *Id.,* citing *Deposit Guaranty Nat'l Bank v. Walter E. Heller & Co.,* 204 So.2d 856, 859 (Miss.1967). Conceding that § 157 of the Restatement does not list an exception for involuntary tort creditors, the court found support for its position in Comment a to that section, which, as we have seen, admits of the possibility of a tort claimant with a claim against the beneficiary of a spendthrift trust being able to reach that beneficiary's interest. *Sligh, supra,* 704 So.2d at 1026. It also was persuaded by those portions of Scott, The Law of Trusts and Bogert, Trusts and Trustees, quoted herein and to which the appellant referred us. *Id.* at 1027. Finally, the court rejected the three

payment would constitute a "periodic payment," barring the appellant's attachment.

public policy considerations it identified from its own precedents upholding the validity of spendthrift trust provisions: "(1) the right of donors to dispose of their property as they wish; (2) the public interest in protecting spendthrift individuals from personal pauperism, so that they do not become public burdens; and (3) the responsibility of creditors to make themselves aware of their debtors' spendthrift trust protections." *Id.* at 1027.

This is the minority position, which the *Sligh* court admitted. *See, Sligh,* 704 So.2d at 1026, *citing Thackara v. Mintzer,* 100 Pa. 151, 1882 Pa. Lexis 34, (1882); *Kirk v. Kirk,* 456 P.2d 1009, 254 Or. 44 (1969). *See also, Davies v. Harrison,* 3 Pa. D. & C. 481 (Pa.1923); *Kirkpatrick v. United States Nat'l Bank,* 264 Or. 1, 502 P.2d 579 (1972); *United Mine Workers of Am. v. Boyle,* 418 F.Supp. 406 (D.D.C.1976), aff'd, 567 F.2d 112 (D.C.Cir.1977), *cert. denied,* 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 808 (1978). In *Mintzer,* the issue was whether a spendthrift trust could be attached for the payment of a judgment for alimony awarded to the wife of the trust beneficiary. 100 Pa. at 154. Answering in the negative, the court stated, broadly:

> "The attachment issued on a debt of record fixed by judgment and decree. Whether the judgment be for a breach of contract or for a tort, matters not. The testator recognized no such distinction. He impressed on the fund exemption from all kinds of legal process against the trustee, not only for debts, but also for 'all liabilities whatever' of [the beneficiary]."

*Id.* at 154–55. In *Kirk,* the monies due to the beneficiary of a spendthrift trust were attached to enforce the payment of a tort judgment. Although recognizing exceptions for alimony and child support, the court held that the beneficiary's income from the trust could not be attached prior to its receipt by him. 456 P.2d at 1010.

Other than language in *Gibson v. Speegle,* 494 A.2d 165, 1984 Del. Ch. Lexis 475, *6, characterizing as sound the conclusion of the authors of several respected treatises on

trusts, i.e., Scott, Bogert and Griswold,[12] that "tort claimants should not be considered 'creditors' for purposes of a spendthrift trust provision" and an approving reference to Comment a to § 157 of the Restatement (Second) of Trusts in *Helmsley–Spear, Inc. v. Winter,* 101 Misc.2d 17, 20, 420 N.Y.S.2d 599, 601 (1979), and statutes codifying the result,[13] Sligh is the only case we have found, and the only case that the appellant has cited, which holds expressly that a spendthrift trust may be invaded to pay the judgment of an intentional or gross negligence tort-judgment creditor. *See also St. Paul & Marine Ins. Co. v. Cox,* 583 F.Supp. 1221, 1228–29 (N.D.Ala.1984), *aff'd.* 752 F.2d 550 (11th Cir.1985), in which the insurer of an employer, who had been defrauded by his employee, a beneficiary under an ERISA trust, was permitted to reach that employee's entire interest in the trust and, notwithstanding that the employee was entitled to only periodic payments, to receive payment immediately.

*Sligh* is no longer the law of Mississippi.[14] A mere five months after the decision in *Sligh,* by ch. 460, § 2, Laws, 1998,

---

**12.** Griswold, Spendthrift Trusts § 365 (2d ed.1974).

**13.** California: Ca. Prob.Code § 15305.5 (trustee of a spendthrift trust may be ordered to pay a judgment of restitution against a beneficiary who has committed a felony; where the trustee has discretion whether to make payments, the trustee may be ordered to pay the judgment if he elects to pay anything).

Georgia: O.C.G.A. § 53–12–28(c) (2002) (spendthrift provisions are valid except for certain claims against distributions, among which are tort judgments).

Louisiana: La.Rev.Stat. Ann. § 9:2005 (West 1991) (A beneficiary's interest in a spendthrift trust may be seized to satisfy a judgment for "an offense or quasi-offense committed by the beneficiary or by a person for whose acts the beneficiary is individually responsible.")

**14.** *See,* 88 Calif. L.Rev. 1877, Symposium on Law in the Twentieth Century: Uniform Acts, Restatements, and Trends in American Trust Law at the Century's End. ("An almost amusing reversal of direction was the prompt 1998 legislation in Mississippi to overturn the widely acclaimed *Sligh v. First National Bank. Sligh* had introduced a policy-based spendthrift exception for the benefit of victims of a beneficiary's gross negligence or recklessness. Furthermore, lengthy and vigorous debates in the last few years have eventually led to no significant changes or trends in rules identifying privileged claimants who can

effective March 23, 1998, the Mississippi Legislature passed the Family Trust Preservation Act of 1998. Miss.Code Ann. § 91–9–503 (2003), relevant to this case, provides:

"Beneficiary's Interest not subject to transfer; restrictions on transfers and enforcement of money judgments

"Except as provided in Section 91–9–509, if the trust instrument provides that a beneficiary's interest in income or principal or both of a trust is not subject to voluntary or involuntary transfer, the beneficiary's interest in income or principal or both under the trust may not be transferred and is not subject to the enforcement of a money judgment until paid to the beneficiary."

In addition, while a New York State trial court in *Helmsley–Spear, Inc. v. Winter, supra,* 101 Misc.2d at 20, 420 N.Y.S.2d at 601, had held that, because of his disloyalty, the interest of a beneficiary, who had been convicted of stealing from his employer, in an employment trust, was not exempt from attachment, despite the spendthrift provision applicable to it, on appeal, the Appellate Division modified that decision, holding that the employee's interest was exempt from the claims of tort creditors. 74 A.D.2d 195, 199, 426 N.Y.S.2d 778, 781 (1980), *aff'd,* 52 N.Y.2d 984, 438 N.Y.S.2d 79, 419 N.E.2d 1078 (1981). And in *Speegle,* despite the Chancellor's favorable inclination toward tort-judgment creditors, a statute prevented him from adopting the view he clearly favored. 1984 Del. Ch. Lexis 475, *6–7.

We are not persuaded, in any event, by the reasoning of the *Sligh* court. It is true that the court acknowledged the exceptions for alimony and for child support. Missing from the court's opinion, however, is any analysis of the basis for those exceptions. The Mississippi Supreme Court, although noting the donor's intention as, perhaps, the most important

---

penetrate the spendthrift shield. This is particularly so with reference to privileged status that applies to certain governmental claimants, and often applies to alimony and the support claims of children and spouses and to certain claims for necessities and for protection of a beneficiary's trust interest.") (citations omitted).

public policy consideration it addressed, concluded that, because the law has generally recognized exceptions, i.e., for support, alimony, taxes, to the spendthrift doctrine, the rights of trust donors to dispose of property as they wish are not absolute. 704 So.2d at 1028. This statement, although accurate, does not analyze why the law carved out these particular exceptions, which, as the court recognized, effectively takes precedence over the trust donor's intent.

To be sure, a contract creditor is on notice as to the terms of a spendthrift trust and, on that account, is able to regulate his or her conduct in light of that information. That is not the critical basis for the exception of alimony and support from the rule, however. *Robertson* and *Zouck*, as our opinions make clear, relied heavily on the fact that the obligation was a duty and not a debt. *Robertson, supra,* 192 Md. at 660, 65 A.2d at 295; *Zouck, supra,* 204 Md. at 298–99, 104 A.2d at 579. That is also the theme that runs through *Hofferbert*. 58 F.Supp. at 705. In none of these cases was notice mentioned as a basis for the decision. That a tort-judgment creditor is not on notice that he or she will be injured and thereby will incur a loss goes without saying, but, with due respect to the near unanimous commentators,[15] that fact alone does not make

---

**15.** The Uniform Trust Act, drafted by the National Conference of Commissioners of Uniform State Laws, does not advocate including tort judgment creditors among the creditors able to invade spendthrift trusts. Section 503, "Exceptions to Spendthrift Provision," provides:

"(a) In this section, "child" includes any person for whom an order or judgment for child support has been entered in this or another State.

"(b) Even if a trust contains a spendthrift provision, a beneficiary's child, spouse, or former spouse who has a judgment or court order against the beneficiary for support or maintenance, or a judgment creditor who has provided services for the protection of a beneficiary's interest in the trust, may obtain from a court an order attaching present or future distributions to or for the benefit of the beneficiary.

"(c) A spendthrift provision is unenforceable against a claim of this State or the United States to the extent a statute of this State or federal law so provides."

The commentary to that section indicates that "[t]he drafters ... declined to create an exception for tort claimants." *See,* Comment, Uniform Trust Act § 503, 7C U.L.A 76 (Supp.2002).

the claim he or she makes in respect of the loss anything other than a debt or make its exemption from the bar of a spendthrift trust, a matter of public policy.

There is another reason that we reject the appellant's attempt to obtain an exemption from the bar of the spendthrift trust. Our case law reflects, as the appellant points out, that this Court has, over time, expanded the class of persons permitted to invade a spendthrift trust in satisfaction of obligations owed by beneficiaries, and, as a natural consequence of that expansion, frustrated, in some cases, the intent of the trust settlors. The exceptions to the spendthrift doctrine were recognized by this Court based on clear public policy considerations. The public policy that the appellant identifies and on which he relies is that of prohibiting criminals from benefitting financially from their crimes. As indicated, to establish the existence of the public policy, he points to the "Son of Sam" statute, the Slayer's Rule and the Prisoners' Litigation Act. Proceeding from that premise, he argues that McGee, a convicted felony murderer, should not be allowed to receive benefits from the trust to the exclusion of his creditors.

Certainly, the public policy of this State does not countenance a system wherein criminals are allowed to derive a financial benefit from their illegal activity, thus putting the lie to the oft stated admonition, "crime does not pay." In fact, this State has announced, it is true, a clear public policy in that regard. We, however, agree with the appellees that the public policy goals on which the appellant's arguments are based, as strong and clear as they are, have no applicability to the case *sub judice* and, thus, do not, and cannot, inform our decision. McGee is not, in any discernible manner, benefitting from the crime for which he was convicted and ultimately imprisoned. Clearly, any benefit McGee receives from the Trust vested prior to the commission of his criminal acts and is completely independent of, and separate from, his criminal conviction. As the appellees point out, "McGee's situation is not in any way analogous to one where a criminal is 'rewarded' for his criminal acts by means of book, television, or movie

royalties, or by inheriting from his victim's estate." Unlike the criminal at whom the "Son of Sam" legislation and the Slayer's Rule are aimed, the benefit McGee derives from the Trust and the criminal acts he committed are not related at all. The technically and legally more accurate statement is that McGee is benefitting from his status as a life beneficiary under a trust established by his deceased mother. It is simply incorrect to say that McGee is, in any manner, benefitting from his crimes. Consequently, we decline to frame our analysis on the public policy goals set forth by the appellant.

JUDGMENT AFFIRMED, WITH COSTS.

BATTAGLIA, J., Dissenting.

I respectfully dissent.

Katherine Ryon was beaten to death during the course of a robbery that occurred in her home. After James Calvert McGee was convicted of felony-murder for his participation in the robbery and murder of Ms. Ryon, a money judgment was entered against him pursuant to a settlement agreement, in which McGee compromised civil claims brought against him by Robert Duvall, the Personal Representative of the Estate of Ms. Ryon. The majority today concludes that Ms. Ryon's estate cannot enforce its judgment against McGee's interest in an $877,000.00 spendthrift trust established for him by his deceased mother. The majority acknowledges that claimants seeking alimony, child support, and unpaid taxes may attach a beneficiary's interest in a spendthrift trust, but concludes that the victim of a violent tort may not, reasoning that such a victim is only "a mere judgment creditor." For the reasons expressed herein, I respectfully disagree.

A spendthrift trust is a trust that restrains the voluntary or involuntary transfer of a beneficiary's interest in the trust. *See* Restatement (Second) of Trusts § 152(2)(1959). As the majority points out, this Court first acknowledged the validity of spendthrift trusts in *Smith v. Towers*, 69 Md. 77, 14 A. 497 (1888). In that case, our predecessors recognized that although "the right to sell and dispose of property ... is a

necessary incident ... to the absolute ownership of ... property," the "law does not ... forbid all and any restraints on the right to dispose of [trust property]." *Id.* at 87–88, 14 A. at 498–99. The law forbids, "only such restraints as may be deemed against the best interests of the community." *Id.* at 88, 14 A. at 499. "The donor or devisor" of trust, the *Smith* court stated, is "the absolute owner of the property" and "has the right to prescribe the terms on which his bounty shall be enjoyed, unless such terms be repugnant to the law." *Id.* at 88–89, 14 A. at 499. The *Smith* court reasoned that the gift of an equitable right to the exclusion of creditors is not "repugnant to the law" because "[a]ll deeds and wills and other instruments by which such trusts are created, are required by law to be recorded in the public offices, and creditors have notice of the terms and conditions on which the beneficiary is entitled to the income of the property." *Id.* Thus, if creditors choose to extend credit to such debtors, "they do so with their eyes open." *Id.*

Ms. Ryon, of course, did not have the luxury of assessing the extent and character of McGee's financial resources before he robbed her and she died. For this reason, most legal scholars agree that tort creditors should not be precluded from recovering against a tortfeasor's interest in a spendthrift trust. According to Scott on Trusts,

> A man who is about to be knocked down by an automobile has no opportunity to investigate the credit of the driver of the automobile and has no opportunity to avoid being injured no matter what the resources of the driver may be.... [T]here seems to be something rather shocking in the notion that a man should be allowed to continue in the enjoyment of property without satisfying the claims of persons whom he has injured. It may well be held that it is against public policy to permit the beneficiary of a spendthrift trust to enjoy an income under the trust without discharging his tort liabilities to others.[1]

---

1. Fourth Edition, § 157.5, p. 220.

Similarly, and significantly, in Bogert on Trusts and Trustees, it is emphasized that, "the validity of spendthrift trusts ... does not apply" and that the beneficiary should not, therefore, "be permitted to circumvent the case and statute law as to liability for wrongs by taking advantage of the spendthrift clause." [2]

The majority concedes that tort creditors do not have the benefit of notice, which, as was discussed in *Smith, supra,* is a primary purpose for not allowing the invasion of spendthrift trusts. Despite this, the majority concludes that Ms. Ryon's estate cannot reach the corpus of the spendthrift trust because its claim is nothing other "than a debt" and that "its exemption from the bar of a spendthrift trust" is not "a matter of public policy." The majority, in my opinion, is wrong.

This Court has held that a beneficiary's interest in a spendthrift trust may be attached to satisfy claims for alimony arrearages and for child support. *See, e.g., Safe Deposit & Trust Co. v. Robertson,* 192 Md. 653, 663, 65 A.2d 292, 296 (1949); *Zouck v. Zouck,* 204 Md. 285, 300, 104 A.2d 573, 580 (1954). Also, a spendthrift trust was attached for the payment of federal income taxes in *Mercantile Trust Co. v. Hofferbert,* 58 F.Supp. 701, 705–06 (D.Md.1944). "[N]one of these cases," the majority states, "was premised on there having been a lack of notice.... Rather, the courts recognized a fundamental difference between these obligations and those of ordinary contract creditors." The fundamental difference is essentially that these obligations were premised upon judicial intervention and determination of sound public policy.

Just as it is sound public policy to permit the attachment of a spendthrift trust for alimony, child support, and taxes, it is also as sound to permit invasion to make victims of tortious conduct whole. Indeed, a tortfeasor may be liable not only for compensatory damages, but also punitive damages, which we allow in order to "punish the wrongdoer and to deter such conduct by the wrongdoer and others in the future." *Caldor,*

---

2. Second Edition, Rev'd, § 224, p. 479.

*Inc. v. Bowden,* 330 Md. 632, 661, 625 A.2d 959, 972 (1993). Consequently, to equate victims of tortious conduct with contract creditors and distinguish them from recipients of alimony, child support, and tax claims, is without merit.

As the majority concedes, spendthrift trusts are considered valid in Maryland in large part because, by virtue of filing requirements, creditors are put on at least constructive notice of the limited interest of the beneficiary of such a trust. Such notice allows creditors to protect themselves, something that Ms. Ryon could not have done. Moreover, the "duty-debt" distinction set forth by the majority as the basis for its holding is unavailing. The obligation to restitute a wrong is commensurate with the obligations to pay alimony, child support, and taxes. I agree with the commentators that "it is against public policy to permit the beneficiary of a spendthrift trust to enjoy an income under the trust without discharging his tort liabilities to others." *See* Scott on Trusts, *supra.* Consequently, I respectfully dissent.